BREAUX, C. J.
The defendants, Landry Bordelon, Thomas Wright, and Frank Hess were charged with having murdered D. M. Lemoine.
They were indicted for murder, arraigned, tried, and found guilty.
Thomas Wright was found guilty as charged, without capital punishment. Landry Bordelon and Frank Hess were found guilty of manslaughter, and recommended to the mercy of the court. Thomas Wright was condemned to serve at hard labor in the State Penitentiary for the term of his natural life, and Landry Bordelon and Frank Hess were sentenced, respectively, for a term of 10 years at hard labor in the penitentiary.
The defendants who are convicted of manslaughter (Bordelon and Hess) prosecute this appeal. A motion for severance was made by the two accused found guilty of manslaughter, and they requested to be tried separately from Thomas Wright.
• There are three several grounds pressed upon our attention by counsel for these two defendants, and a motion for severance. The first ground is that the sheriff failed to place the names of the tales jurors in the venire box, together with the names of the jurors on the regular panel; that said defendants requested the court to direct the sheriff to place these names in the said box; that the court refused to thus order; that the court then directed the sheriff to call the tales-men he had summoned directly from the list of those he (the sheriff) had selected to serve as talesmen. This was after the sheriff had served this list upon defendants. The box, in which the names selected by the commissioners are placed, and from which these names are drawn to serve on the jury, was not used at all in selecting tales jurors from the list of talesmen.
The second ground is that the district court overruled defendants’ motion for delay to-make a service, and refused to continue the case in order to let the officer serve the whole list of jurors — those of the regular panel and the talesmen as well.
It appears that these defendants had been served with a list of regular jurors for the week. The only objection at this point was that the list of talesmen had not been served on the defendants two days before trial.
The next objection relates to the dying declaration of the deceased. It appears that two witnesses for the state had testified that they heard the shot fired in the street in front of their residence which killed D. M. Lemoine, the deceased; that about five minutes thereafter the deceased called to them from the yard in the rear of their residence;, that they responded to the call, and when they came to him he said that he had been shot to death, and then attempted to walk up the steps leading to the back gallery of their residence. He could not, and fell to-the ground. They testified further that they gave him (deceased) water, and one of these witnesses then asked him, “Who shot you?” He replied: “A negro shot me, but a white man gave him the gun.” He (this witness) further testified that some 10 minutes after this a physician and a witness came, who on the trial testified that after deceased was-brought on the gallery he made a statement to this witness, named Escude, as to who-shot him.
The question which elicited this testimony was objected to on the ground that the evidence sought was not admissible .as a dying declaration nor as part of the res gestee,.for *693 the reason that no foundation had been laid for introducing the testimony as a dying declaration, and that, as the statement was made at least 15 minutes after the shooting, it forms no part of the res gestae.
Upon this objection the trial court ruldd:
“That the dying declaration having been already established by the evidence of other witnesses, who testified that the deceased, when reaching the steps of the house of David Seiss, stated that he was shot to death, and said, ‘Send for my poor wife and children and the doctor.’ These witnesses having testified previous to the testimony of Arthur Escude.”
The first bill of exception was argued at some length by counsel, who insist that the names of the tales jurors summoned by the sheriff in accordance with the order of the trial judge should be placed in the jury box with those drawn prior to the meeting of the court, and should be called and offered for acceptance just as names of jurors summoned for the regular panel are drawn for acceptance.
There is a difference between the case before us for decision and those decisions in which the court directed the jury commissioners to draw additional jurors to serve for one of the weeks of the term.
In one of the decisions cited the court said:
“The term had progressed until the judges, admonished by the state of the docket, ordered thirty additional jurors to be drawn for the third week.” State v. Brooks, 36 La. Ann. 335.
They were drawn by the commissioners.
The court considered in the cited case supra that the additional jurors were a part of the panel “drawn by commissioners,” as they were not for a particular case, but for the week, and their names were properly placed in the jury box, “to be offered for acceptance or rejection as chance may determine.”
A distinction is made between jurors drawn by commissioners under the order of the judge, as before indicated, and talesmen summoned directly under his (the judge’s} orders, without drawing by commissioners. The tales jurors summoned for the case here were drawn to serve as talesmen under the jury act (page 222, No. 135, § 11, of Acts of 1808). It was the order of the judge not' to select from the bystanders, it is true, but from persons in any part of the parish remote from the scene of the crime. Tales Jurors can thus be summoned.
There were three defendants. They were entitled to 36 challenges. It was easy to foresee that, if the right to challenge was freely exercised, they would exhaust the regular panel before selecting the number required, and that tales jurors would have to be summoned.
The objection is that, because they were summoned as they were, they were not tales jurors, but that they were to be considered as regular jurors. We quote defendants’ bill of exception.
“Additional jurors summoned upon the application of the state by written order of the judge granted, and served by the sheriff on such jurors before the day of trial, are a part of the. regular panel, and their names should be placed in the jury box along with those drawn before the meeting of the court, and are to be offered for acceptance or rejection as. chance may determine.”
The contention is not that the judge acted prematurely, but that the specially summoned jurors were not tales jurors, and their names should have been placed in the jury box.
If the tales jurors had been prematurely summoned,- their names would not, on that ground, have to be placed in the jury box. They were drawn as tales jurors. If illegally drawn, the panel itself was illegal, because of prematurely summoned tales jurors.
But the fact that these names were not placed in the venire box does not present an objection which we can -sustain.
If there is any point upon the score of prematurity, and that the panel should have been entirely exhausted before ordering the tales jurors to be examined, it not being an *695 issue, we do not think we should pass upon it.
They (the persons summoned) were present as tales jurors when the jurors drawn from the general venire for the term was ■exhausted They were then called, and the remaining jurors were selected.
In concluding as we have stated, we are brought to the next point of the defense— the admissibility of the dying declaration.
We must infer that the words of the deceased uttered after he had been shot were admitted without objection as a dying declaration. The records do not disclose that they were admitted over defendant’s objection.
After the dying declaration had been admitted in evidence, questions were' propounded to witnesses — those who had testified that the deceased requested them to send for his wife, his children, and the doctor, as before stated. Counsel for defendant objected to their testimony on the ground that testimony had not been “admitted for the introduction of the testimony of a dying declaration,” and that the “statement objected to formed no part of the res gestse.”
Whether proper foundation had been laid by proving that the deceased was conscious, or not, of his impending dissolution, is the question.
“I am shot to death. Send for my wife and children and the doctor!” These are the words relied upon on the part of the state to prove that the deceased thought he would surely die in the near future. This was the evidence of a dying declaration.
No objection was made by the defense at the time that this testimony was offered. The judge considered and treated it as sufficient proof that deceased had lost all hope of living. The deceased died within a short time afterward, as shown by the date the indictment was found against defendants.
There was, the trial judge thought, an absolute consciousness of the approach of death, and nothing indicates that the defense thought at the moment that the testimony was admitted that the judge erred. True, the defense was .not bound by its silence at that particular moment, and could afterward object to the testimony on the ground that foundation had not been laid to admit the dying. declaration.
None the less, the fact that no objection was raised at the time before mentioned gives rise at least to an inference that the judge’s view in the premises was correct; that, to the mind of the judge, the deceased appeared to have had a consciousness of the approach of death.
Our attention was also drawn to the fact that the preliminary proof was submitted to the jury without objection to enable them, advisedly, and from all the lights which the facts and circumstances afford, to determine upon the credibility, weight, and force of the evidence. Eng. & Am. Ency. of Law, vol. 10, p. 387, § 3. There was a carefully prepared and elaborate brief presented by learned counsel, but the bill setting out this point was submitted to us without, argument relating to “the dying declaration.”
We have dwelt upon this point, and have arrived at the conclusion that the evidence does not reveal that the ruling of the judge is an error. The wish to see wife and children- — he having declared that he was shot to death — was most natural on the part of a man who is in a dying condition. He had fallen down, and not a long time afterward died.
It is the first impulse of a man who feels that he is dying. The last words he uttered, “Send for the doctor,” ■ forming part of the sentence, is not an indication of hope. It often happens that dying men wish to see a physician in order to obtain some relief from pain. The mere desire to see a physician *697 does not rebut the declaration that he was shot to death, as he stated, and the judge doubtless thought he (deceased) believed.
For reasons assigned, the judgment appealed from is affirmed.