## NICHOLSON v. STATE.

### (No. 601.)

CRIMINAL LAW—INFORMATION—FILING WITHOUT PRELIMINARY EX-
AMINATION—WAIVER—PLEA IN ABATEMENT—JUDICIAL NOTICE—
RECORDS IN OTHER CASES—HOMICIDE—INSTRUCTIONS—INSTRUCT-
ING ON LOWER DEGREES OF CRIME CHARGED—ON CREDIBILITY OF
WITNESSES—PUNISHMENT—DUTY OF ,JURY TO AGREE ON VERDICT
—STATEMENTS OF COUNSEL—NEW TRIAL—SURPRISE—MISCON-
DUCT OF JURY—SEPARATION—PRESUMPTION OF PREJUDICE—AFFI-
DAVITS OF JURORS—ADMISSIBILITY.

1. Under the statute authorizing the filing of an information
   charging a criminal offense without a preliminary exam-
   ination of the accused, whenever the offense is charged
   within thirty days immediately preceding the first day of a
   regular term of the court in the county wherein such of-
   fense is charged to. have been committed, the thirty days

are to be computed from the date of preferring the charge, not from the date of the commission of the offense, and where there have been no prior proceedings the filing of the information constitutes the charge.

2. An information having been filed two days before the commencement of a regular term of the court, a plea in abatement was filed thereto on the ground that the offense was alleged to have been committed more than thirty days prior to the first day of the term, and that the accused had not been given a preliminary examination on said charge, and had not waived the same. *Held,* that since the plea did not refer to any prior proceedings it did not present the question whether the information was properly filed without a preliminary examination by reason of the fact, as stated in the motion for new trial and bill of exceptions, that the defendant had been charged upon another information with the same offense at the last preceding term of court, had pleaded not guilty thereto, and that the case had by agreement been continued over the term.

3. Courts do not take judicial notice of their records and proceedings in other causes.

4. Where a defendant was charged upon information with a criminal offense and the cause was continued, after a plea of not guilty, to the next term of court, and, at said next term a second information was filed charging the same offense, upon which the defendant was tried and convicted, the objection that, because of the prior proceedings, the second information was improperly filed without giving the defendant a preliminary examination was waived by the failure to interpose such objection by motion to quash or plea in abatement setting forth such prior proceedings, before pleading to the merits.

5. On the trial of a defendant charged with murder in the first degree, it is proper to instruct the jury on the lower degrees of the crime charged where there is evidence from which the jury might reasonably conclude that the killing, if unlawful, was upon a sudden heat of passion rather than malicious or premeditated.

6. An instruction in a criminal case that in determining the weight to be given the testimony of the several witnesses the jury should consider their interest in the result of the case, if any such is proven, their conduct and demeanor while testifying; their apparent fairness or bias if such appears; their opportunities for seeing or knowing the

things about which they testify; the reasonableness or unreasonableness of the story told by them, and all the evidence, facts and circumstances proved tending to corroborate or contradict such witness, if any such appears, *held* not to have been misleading because of the use of the words "story told" and "appears," for the jury could not have otherwise understood the words "story told," as used in the instruction, than in the sense of the testimony given on the trial, and that the fairness or bias of a witness more often "appears" from his conduct on the stand and his manner in testifying than from what he or other witnesses state in their testimony, and, if either such fairness or bias "appears" to the jury, it is a circumstance to be considered in determining the weight to be given to his testimony.

7. It is not error to instruct the jury in a criminal case that they have nothing to do with the punishment of defendant in case of his conviction, and that, in determining the guilt or innocence of the defendant, they have no right to consider what punishment he might or might not receive in the event of his conviction.

8. An instruction that it is the duty of each juryman to give careful consideration to the views of his fellow jurymen upon the testimony, that he should not shut his ears, and stubbornly stand upon his first position regardless of what may be said by the other jurymen, but that it should be the object of all to arrive at a common conclusion, and to that end they should deliberate together with calmness, and agree upon a verdict if that is possible, *held* not to have been prejudicial to defendant when considered in connection with another instruction that if any one of the jury, after having considered all the evidence and consulted with his fellow jurymen, should entertain a reasonable doubt of the defendant's guilt, then the jury cannot find the defendant guilty.

9. That the prosecuting attorney in opening a criminal case stated that the prosecution would prove certain facts which, if they could be shown, would be competent and material, is not ground for setting aside a conviction, although the prosecution should fail to prove such facts.

10. The failure of the prosecution to produce at the trial a witness for whom it had caused a subpoena to issue, the defendant also desiring such witness but having relied solely upon the issuance of subpoena by the prosecution and information received by the clerk of court communicated

to defendant's attorney that the witness had been located and the subpoena would be served, *held* not to have entitled the defendant, after conviction, to a new trial on the ground of surprise, no application for a continuance having been made on the account of the absence of such witness.

11. Under a Statute providing that in the trial of capital cases the jury shall not be permitted to separate, after being sworn, until discharged by the court, and that the officer having the jury in charge shall not suffer any communication to be made to them, *held,* that when a defendant in a capital case has shown a separation of the jury, or an opportunity for other parties, and especially witnesses, to communicate with them, in violation of the statute, and it appears that defendant was prejudiced, or it does not appear that he was not prejudiced thereby, a new trial should be granted.

12. Where a motion for new trial is made by the defendant in a capital case on the ground of the separation of the jury, or that other parties were allowed an opportunity to communicate with them, in violation of the statute, the affidavits of the jurors are competent and admissible as tending to show what actually occurred, and that no prejudice resulted from their conduct. Whether their uncorroborated evidence is sufficient to overcome the inference or presumption of prejudice arising from such misconduct should be determined from all the facts and circumstances of each case; and where it fairly and reasonably appears that no prejudice actually resulted from such misconduct, a new trial should not be granted on that ground.

13. The provisions of the statute as to the care and conduct of the jury in capital cases are mandatory, and for the purpose of securing a fair and impartial trial, and a failure to substantially comply with those requirements will entitle a defendant to a new trial, unless it is made reasonably to appear that prejudice did not result therefrom.

14. The mere temporary separation for a necessary purpose of a juror in a capital case, and who is attended by a proper officer, does not raise a presumption of prejudice.

15. Where the jury in a capital case were permitted to loiter about a hotel office and mingle amongst the witnesses for the state and others, and were scattered about the street, out of the immediate presence of the officer in charge, so that others mingled with them; *held,* that such opportunity to communicate with them was thereby afforded as to raise

a presumption of prejudice, in the absence of a satisfac-
tory showing to the contrary, entitling the defendant to a
new trial.

[Decided February 7, 1910.]                    (106 Pac. 929.)

ERROR to the District Court, Weston County; HON. CAR-
ROLL H. PARMELEE, Judge.

Leonard B. Nicholson was tried upon an information
charging murder in the first degree, and convicted of man-
slaughter. His motion for new trial was overruled, and he
prosecuted error. The material facts are stated in the
opinion.

*M. B. Camplin,* for plaintiff in error.

There was no jurisdiction to try the defendant on the
information filed September 5, 1908, for the reason that he
had not been given a preliminary examination, had not
waived it, and objected to trial upon that information with-
out such examination. The first information charging the
offense upon which defendant was tried having been filed
at the preceding term constituted a preferring of the charge,
and such charge having been preferred more than thirty
days immediately preceding the first day of the September
term it was not competent to try him upon the second
information without a preliminary examination. (Rev.
Stat. 1899, Sec. 5273; Clark's Cr. Proc. 81.) The statute
permits the filing of an information without a preliminary
examination where the charge is made against any person
within thirty days immediately preceding the first day of a
regular term of court, and it is understood that the thirty
days referred to in the statute are to be computed from
the date of preferring the charge, not from the date of the
commission of the offense. The court takes judicial notice
of the terms of the district courts. (Hollibaugh v. Hehn,
13 Wyo. 269; Ackerman v. State, 7 Wyo. 509.) There
being no contrary showing in the record, the continuance at
the preceding term under the first information must be

assumed to have been caused upon the application of the prosecution. (Rev. Stat. 1899, Sec. 5273; Rude v. People, 99 Pac. 317.) That which the law makes essential in proceedings in deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused, much less by his failure when in custody to object to unauthorized methods. (State v. Walton, 91 Pac. 495.) The defendant was forced to trial over his protest under the second information, which had been filed without any authority of law. (Keefe v. Dist. Court, 16 Wyo. 381; Hollibaugh v. Hehn, *supra;* Clark's Cr. Proc. 81 ; *Ex parte* Baker, 25 Pac. 966; Walker v. People, 45 Pac. 388; State v. Farris, 51 Pac. 772.) The defendant's plea in abatement should therefore have been sustained.

It was error to deny the motion of the defendant upon the conclusion of the testimony of the prosecution to direct a verdict of acquittal because of the insufficiency of the evidence to convict. The evidence failed to make out a *prima facie* case, as it showed justification for the killing. (Hughes' Cr. Proc., Sec. 82; Blashfield on Inst., p. 13 and note; Boswell v. Bank, 16 Wyo. 200.) There being no evidence that the killing was manslaughter, all the instructions given concerning that crime were erroneous and highly prejudicial to the defendant. Such instructions gave the jury an opportunity to return a compromise verdict unwarranted by the evidence. Although the charge included such crime, instructions concerning it were not proper in the absence of evidence sufficient to convict of such crime. The same is true with reference to the instruction concerning murder in the second degree. The various degrees of murder were not correctly defined in the instructions. It is not possible for one purposely and with premeditated malice to kill another while he is engaged in protecting his own life. Argumentative instructions are improper. (People v. Frank, 83 Pac. 578.)

The defendant is entitled to a new trial on the ground alone of unlawful separation of the jury. If there is any

doubt about the misconduct charged in the motion it should be resolved in favor of the defendant. (Clark's Cr. Proc., 170-180; Hughes' Cr. Proc., Secs. 2970-2974; State v. Strodemeir, 83 Pac. 22; State v. West, 81 Pac. 107; State v. Sly, 80 Pac. 1125; U. S. v. Swan, 34 Pac. 533; State v. Place, 32 Pac. 736; People v. Thornton, 16 Pac. 244; State v. Bailey, 3 Pac. 769; Com. v. McCaul, 1 Va. Cas. 271; State v. Foster, 45 La. Ann. 1176; McLain v. State, 10 Yerg. (Tenn.) 241; Maher v. State, 3 Minn. 444; McLean v. State, 8 Mo. 153.)

The failure of the prosecution to produce a witness for whom it had caused a subpoena to issue, the presence of which witness was also desired by the defendant, constituted surprise which ordinary prudence on the part of defendant could not have guarded against, as shown by the affidavits in support of the motion for new trial, and on that ground a new trial should have been granted. The verdict is not sustained by sufficient evidence and is contrary to law. The evidence shows that the deceased was the aggressor, and that the defendant acted in self defense. The verdict is uncertain in not specifying whether it was for voluntary or involuntary manslaughter. On the ground of the insufficiency of the evidence a new trial should be awarded. (Bryant v. State, 7 Wyo. 311; Cornish v. Territory, 3 Wyo. 96; State v. Pressler, 16 Wyo. 214; State v. McCarthy, 92 Pac. 521; People v. Frank, 83 Pac. 579; State v. Marselle, 86 Pac. 587; Terr. v. Hendricks, 84 Pac. 523; State v. Mcphail, 81 Pac. 683; People v. Ward, 79 Pac. 448; People v. Simonson, 40 Pac. 440.)

The statement of the prosecution in opening the case to the jury that the State would show by a physician that the fatal wound could not have been received in the manner claimed by the defendant was improper, for that was a matter for the jury to determine with reference to the relative positions of the defendant and deceased at the time of the killing. Upon that subject the opinion of experts would be

incompetent. (People v. State, 29 Pac. 64; State v. Martin, 83 Pac. 849.)

*W. E. Mullen*, Attorney General, and *James O. Marts*, County and Prosecuting Attorney, for the State.

The defendant waived the objection that he had not been given a preliminary hearing by entering a plea of not guilty to the first information. (McGinniss v. State, 16 Wyo. 72; Koppala v. State, 15 Wyo. 416.) Moreover, the information upon which the defendant was tried having been filed within thirty days preceding a regular term of court, a preliminary examination was not necessary. (Rev. Stat. 1899, Sec. 5273; Ackerman v. State, 7 Wyo. 509; Hollibaugh v. Hehn, 13 Wyo. 275; Boulter v. State, 5 Wyo. 36; McGinniss v. State, 16 Wyo. 75.) The situation was practically the same as if the defendant had been tried upon the first information.

No error was committed in denying defendant's motion for a directed verdict at the conclusion of the evidence produced by the prosecution. Where there is evidence tending to prove plaintiff's case, it is error to direct a verdict for the defendant. (Mau v. Stoner, 10 Wyo. 125.) The instructions with reference to the lower degrees of the crime of murder were proper. An examination of the evidence shows a conflict both as to theory and circumstances leading up to the killing. The evidence shows that there had been a quarrel between the defendant and the deceased prior to the date of the killing, and there were other circumstances shown by the testimony wholly inconsistent with the statement of the defendant that the killing was in self defense, which were proper to be considered by the jury in arriving at the degree of guilt. It does not appear that the defendant was prejudiced by the instructions upon the lesser degrees, and even if they had been irrelevant, there would be no error. The instructions were not harmful. (Arnold v. State, 5 Wyo. 439.) Such instructions appear to fairly state the law. Defendant having been convicted of manslaughter only he cannot complain of the form of the in-

structions given on murder in the first or second degree unless it clearly appears that they were in some manner prejudicial. (Ross v. State, 8 Wyo. 351.) It is impossible to rehearse in each instruction every principle of law involved in the case, and it was therefore proper to direct the jury to consider all of the instructions together. (Downing v. State, 11 Wyo. 86; Dalzell v. State, 7 Wyo. 450.)

The affidavits with reference to the alleged misconduct of the jury and the officer having them in charge during the progress of the trial do not show that the rights of the defendant were prejudiced. The jurors were in charge of the bailiff while out of the court room, and the facts shown by the affidavits alleging a separation of the jurors were fully explained in counter-affidavits and therefore present no reasonable ground for reversal. A separation of one or more jurors from the others and their conversing with outside parties relative to subjects not connected with the case, they being in the charge and the immediate presence of the proper officers, and of each other, is not such a separation as prevents a fair trial. (Cook v. Terr., 3 Wyo. 110.) There was no surprise such as to entitle the defendant to a new trial arising out of the fact that the prosecution failed to produce one of the witnesses for whom it had caused a subpoena to issue. Ordinary prudence would seem to require that a defendant should have subpoenas issued for all witnesses deemed to be material to his defense. If the prosecution fails to produce a sufficient number of witnesses to enable a defendant to make his defense, it is not a matter which a defendant may complain of on the ground of surprise. It is submitted that the evidence is sufficient to authorize the verdict which was returned. The weight of the evidence is a question for the jury, and it is not necessary that it be conclusive or satisfactory in order to be competent. (Keffer v. State, 12 Wyo. 49.) A verdict will not be disturbed when rendered upon conflicting evidence. (Edwards v. Murray, 5 Wyo. 153.) The punishment for manslaughter, whether voluntary or involuntary,

is the same. The definition made by the statute between
involuntary and voluntary manslaughter does not touch
the gravity of the offense but refers rather to the manner
of its commission. The failure of the verdict therefore to
state whether the defendant was guilty of voluntary or in-
voluntary manslaughter cannot be held to be prejudicial.
(McGinnis v. State, 16 Wyo. 72.) The objection to the
language of the prosecuting attorney in his opening state-
ment to the effect that the course of the bullets in the body
of the deceased would be shown by the testimony of a
physician was not improper, and in fact the evidence alluded
to in such statement was admitted without objection. The
record presents no justification for the killing except what
is shown by the testimony of defendant himself, and it is
evident that the jury did not accept his explanation as con-
clusive, but determined the matter upon the other facts
and circumstances related by the different witnesses.

BEARD, JUSTICE.

The plaintiff in error, Nicholson, was tried in the District
Court of Weston County upon an information charging
him with murder in the first degree; was found guilty of
manslaughter and sentenced to a term in the penitentiary.
From that judgment he brings the case here on error.

It appears from the record that on September 5, 1908,
the County Attorney of said county filed an information in
said court charging the plaintiff in error (who will be here-
inafter called defendant) with the crime of murder in the
first degree by killing and murdering one Rudolph W. Fur-
rer on the 26th day of February, 1908. On September 7,
1908, the same being the first day of the term, the defendant
was arraigned on said information and filed a plea in abate-
ment thereto on the ground that the offense therein charged
is alleged to have been committed on February 26, 1908,
and more than thirty days prior to the first day of the
September, 1908, term of the court, and that he had not been
given a preliminary examination on said charge and had not
waived the same. On the same day the prosecutor filed a

general demurrer to said plea, which demurrer was sustained by the court, whereupon the defendant on said day entered his plea of not guilty. The ruling of the court in sustaining the demurrer to the plea in abatement is assigned as error. The statute provides that an information may be filed without a preliminary examination whenever an offense shall be charged against any person at any time within thirty days immediately preceding the first day of a regular term of court of the county wherein such offense is charged to have been committed. (Sec. 5273, R. S. 1899.) Counsel for defendant properly concedes in his brief "that the filing of the information constitutes the charge where there has been no prior proceedings," and "that the thirty days are to be computed from the date of preferring the charge, not from the date of the commission of the offense." The plea in abatement in this case contains no statement or reference to any prior proceedings. It is argued here that another information charging the same offense against the defendant was filed in said court March 2, 1908; that he was arraigned on that information the next day and entered a plea of not guilty thereto; that the case was set for trial May 25, 1908, and was afterwards by agreement of plaintiff and defendant continued to the September term of the court. But the first reference we find in the record to such proceedings is in the motion for a new trial in this case, and is followed by a statement to the same effect in the bill of exceptions. The question, if meritorious, was not presented by the plea in abatement; and the courts do not take judicial notice of their records and proceedings in other causes. (Demars v. Hickey, 13 Wyo. 371.) On the face of the record the court did not err in sustaining the demurrer to the plea in abatement. The objection that defendant had not been given a preliminary examination on the ground of prior proceedings against him for the same offense, if good, came too late. Such objection is waived unless interposed by motion to quash or plea in abatement before pleading to the merits. (McGinnis v. State, 16 Wyo.

72.)   Assuming, but not holding, that the pendency of the first information sufficiently appears in the record, the situation on Sept. 7, the first day of the term, after the plea in abatement had been held insufficient and the defendant had entered his plea of not guilty, appears to be, that there were then pending against him two informations for the same offense.   The statute, Sec. 5300, R. S. 1899, provides, "If there be at any time pending against the same defendant two or more indictments for the same criminal act, the prosecuting attorney shall be required to elect upon which he shall proceed, and upon trial being had thereon the remaining indictment or indictments shall be quashed."   In this case there was no request for such election, and the trial was proceeded with on the second information without further objection.

At the close of the evidence for the state, the defendant requested the court to instruct the jury to return a verdict for the defendant on the ground of insufficiency of evidence to convict.   This the court refused to do.   This assignment of error will be considered later in connection with the objection that the verdict is not sustained by the evidence.   It is next urged that the court erred in instructing on the lower degrees of crime included in the information.   But there was evidence from which the jury might reasonably conclude that the killing, if unlawful, was upon a sudden heat of passion rather than malicious or premeditated.   On the evidence as it appears in the record it was not error to instruct on the lower degrees.   The giving of certain instructions defining the different degrees of crime included in the information and explaining the distinction between those degrees is assigned as error, mainly on the ground that no instructions on the lower degrees were warranted by the evidence.   The definitions given of the several degrees of crime included in the information are in the language of the statute; and the instructions explaining the distinctions between the several degrees correctly state the law, and are not seriously challenged on that ground.

The court instructed the jury "that the credibility of witnesses is a question exclusively for the jury to determine. In determining the weight to be given to the testimony of the several witnesses, the jury should take into consideration their interest in the result of the case, if any such is proved; their conduct and demeanor while testifying; their apparent fairness or bias, if such appears; their opportunities for seeing or knowing the things about which they testify; the reasonableness or unreasonableness of the story told by them, and all the evidence and facts and circumstances proved tending to corroborate or contradict such witness if any such appears."

The use of the words "story told" and "appears," it is argued, were misleading. But we think the jury could not have otherwise understood the words "story told," as used in this instruction, than in the sense of the testimony given on the trial; and that the fairness or bias of a witness more often "appears" from his conduct on the stand and his manner in testifying than from what he or other witnesses state in their testimony; and if either such fairness or bias of a witness "appears" to the jury, it is a circumstance to be considered in determining the weight to be given to his testimony. The court instructed the jury "that with the punishment of this defendant in case of his conviction, you have nothing whatever to do; so that in determining the guilt or innocence of this defendant, you have no right to take into consideration what punishment he might or might not receive in the event of his conviction." * * * We see no error in this instruction. The guilt or innocence of an accused does not depend upon the extent of the punishment fixed by the law; and the sole duty of the jury is to determine, from the evidence, the guilt or innocence of the defendant. Instruction No. 30, is objected to, and is as follows: "It is the duty of each juryman, while the jury is deliberating upon their verdict, to give careful consideration to the views his fellow jurymen may have to present upon the testimony in the case. He should not

shut his ears, and stubbornly stand upon the position he first takes, regardless of what may be said by the other jurymen. It should be the object of all of you to arrive at a common conclusion, and to that end you should 'deliberate together with calmness. It is your duty to agree upon a verdict if that is possible." This. instruction was followed by No. 31, defining a reasonable doubt; and then by No. 32, which is as follows: "You are instructed that if any one of the jury, after having considered all the evidence in this case, and after having consulted with his fellow jurymen, should entertain a reasonable doubt of the defendant's guilt, then the jury cannot find the defendant guilty." We cannot perceive how No. 30, when considered in connection with No. 32, could prejudice the defendant. An instruction similar in effect was held not to be erroneous in Allen v. United States, 164 U. S. 492. Other instructions are criticised rather than contended to be erroneous and need not be referred to more fully. Taking the instructions as a whole, we think they presented the law of the case to the jury as favorably to the defendant as he was entitled to.

Objection is made to the statement of counsel for the prosecution in stating the case to the jury and the evidence by which it expected to sustain it, to the effect that they would show by a doctor and others that one of the wounds of deceased could not have been made in the manner claimed by defendant. If that could be shown it was competent and material; and if the prosecution failed to sustain the statement by evidence, it certainly did not prejudice the defendant.

Several rulings of the court as to the admissibility of evidence are assigned as error. We have examined the record in that respect and find nothing that appears to be prejudicial error. Most of the objections are to evidence tending to effect the credibility of witnesses, or only remotely bearing upon the issues; and even if some of the rulings were erroneous as claimed, the evidence admitted or excluded

was not of a character to warrant a reversal of the case on that account.

It is urged that a new trial should have been granted on the ground of surprise which ordinary prudence could not have guarded against. This surprise consists in the failure of the state to produce at the trial a witness for whom a subpoena had been issued by the prosecution. It appears that the attorney for the defendant on August 22, 1908, inquired at the clerk's office if a subpoena had been issued for one Schmidt and was informed that such subpoena had been issued and sent to the sheriff of Natrona County for service and that said sheriff had informed the clerk that he had located said witness and would serve the subpoena. If the defendant considered the testimony of this witness important in his defense he should have had him subpoenaed on his behalf and not have relied upon the subpoena issued on behalf of the state. In any event, no application for a continuance was made on account of his absence, and the objection came too late.

The motion for a new trial contains a charge of misconduct of the jury and the officer in charge of the same, which is supported by affidavits. Several affiants state in their affidavits that during the progress of the trial they saw one of the jurors separated from the balance of the jury and on the street unattended by an officer; and two affiants state that at another time they saw another juror go, unattended, into a store and into a bank. One affiant states that the "jury were at different times during the progress of said trial permitted to separate and scatter around in and about said hotel at meal time, promiscuously, from the dining room, office, and in front of said hotel, where the prosecuting witness, and other witnesses for the state were stopping; and said jury were permitted to stop in the office of said hotel and to loiter about the same; and intermingle amongst the people and guests and witnesses for the state in said cause; affiant further says some of the witnesses for the state harbored a very bitter feeling against the defendant,

and so publicly declared." Another affiant states, in addition to seeing a juror going into the drug store, that he "saw the jury separated; a part of the said jury was on one side of the street, and a part of the same on another side of the street in said town of Newcastle, in said county, and at said time saw the officer with said jury leave the same, out on the street, as aforesaid, and go into the First National bank; * * * that at said time people were standing about and passing and repassing the different members of said jury scattered about from one side of the street to the other, and intermingling with the same and circulating between and amongst said jurymen." The juror who went into the drug store and bank made an affidavit in which he states "that with permission of the bailiff he did enter the First National bank building to visit the water closet, after which he immediately returned to the remainder of the jury which were waiting in the street outside; that also with the permission of the bailiff he entered the Wyoming Pharmacy, or Musser's drug store, for the purpose of buying cigars, the bailiff remaining outside on the sidewalk, and at no time was the affiant out of sight of said bailiff." The other juror stated to have been seen on the street unattended, states in an affidavit "that he did not absent himself from the body of said jury on the streets of Newcastle at any time during the progress of said trial, except that he went to the closet in the Antlers hotel, and that the balance of said jury was in the washroom of said hotel adjacent to said water closet." Each of these two jurors also states that during such separations he did not discuss the case with anyone and that he did not see anyone discuss the case with any member of the jury.

The statute provides "In the trial of capital cases the jury shall not be permitted to separate, after being sworn, until discharged by the court" (Sec. 5385, R. S. 1899), and by Sec. 3646, the officer having the jury in charge shall not suffer any communication to be made to them. In some states it is held that when a defendant shows a separation

of the jury in violation of the statute he has made a sufficient prima facie showing to entitle him to a new trial, and to shift the burden onto the State of showing clearly and beyond reasonable doubt that no prejudice resulted from such separation; and that the uncorroborated affidavit of the juror is insufficient for that purpose (State v. West (Idaho), 81 Pac. 107), while in other states it is held that prejudice must affirmatively appear. Our opinion is that the reasonable and just rule lies between these extremes; and that when a defendant in a capital case has shown a separation of the jury, or an opportunity for other parties, and especially witnesses, to communicate with them in violation of the statute and it appears that the defendant was prejudiced, or that it does not appear that he was not prejudiced thereby, a new trial should be granted. The affidavits of the jurors are competent and admissible as tending to show what actually occurred and that no prejudice resulted from their conduct. Whether their uncorroborated evidence is sufficient to overcome the inference or presumption of prejudice arising from misconduct, we think, should be determined from all the facts and circumstances of each case; and where it fairly and reasonably appears in a particular case that no prejudice actually resulted from such misconduct, a new trial should not be granted on that ground. In the case at bar we think the conduct of the two jurors who separated themselves from the body of the jury is sufficiently explained to warrant the conclusion that no prejudice resulted to the defendant on that account. But the uncontradicted statements contained in the affidavits that the jury was permitted to loiter about the hotel office and mingle amongst the witnesses for the State and others, and that they were scattered about the street and that others mingled with them, and that the officer left them unattended on the street and went into the bank, we think, afforded such opportunity for communication with them as, in the absence of a satisfactory showing to the contrary, to raise a presumption of prejudice. It appears that there was but one officer in charge of the jury while absent from the jury room at

meals; and it is apparent that if it became necessary on such occasions for a juror to separate from his fellows for a proper purpose, the officer could not be present with both. That some of the witnesses for the State were hostile to the defendant appears not only by affidavit but from the evidence. The provisions of the statute as to the care and conduct of the jury in capital cases are mandatory and for the purpose of securing a fair and impartial trial, and a failure to substantially comply with those requirements will entitle a defendant to a new trial, unless it is made reasonably to appear that prejudice did not result therefrom. The mere temporary separation of a juror for a necessary purpose, and who is attended by a proper officer, would not raise a presumption of prejudice. An examination of the record in this case convinces us that the requirements of the statute have been so far departed from, under all of the circumstances, as to entitle the defendant to a new trial.

The only other question requiring consideration is the sufficiency of the evidence. The defendant attempted to justify the homicide on the ground of self-defense, and, there being no witnesses to the homicide, the State relied upon circumstantial evidence to overcome the claim of the defendant. The evidence was sufficient to require the case to go to the jury, and the court did not err in refusing to direct a verdict of acquittal. The sufficiency of the evidence, whatever it may be upon another trial, will be a matter to be determined at that time.

For the error in refusing to grant a new trial on the ground of misconduct of the jury the judgment of the District Court is reversed and the case remanded for a new trial.

*Reversed and remanded.*

POTTER, C. J., and SCOTT, J., concur.