(128 So. 658)

**STATE v. McKEE et al.**
No. 30538.

May 5, 1930.

Warren Doyle, of New Orleans, for appellant McKee.

Percy Saint, Atty. Gen., E. R. Schowalter, Asst. to Atty. Gen., and Eugene Stanley, Dist. Atty., Conrad Meyer, Jr., Asst. Dist. Atty., and J. Bernard Cocke, Asst. Dist. Atty., all of New Orleans, for the State.

BRUNOT, J.

Robert Altmeyer, Robert McKee, also known as Robert Horn, and William Wollfarth were arraigned in section B of the criminal district court of the parish of Orleans, upon an information charging them with the crime of robbery. On the date of the trial, the court, upon the motion of the prosecuting officer, ordered a severance as to William Woolfarth. Altmeyer and McKee were tried, convicted, and sentenced to serve a term in the Louisiana state penitentiary. The state invoked, and the court imposed, the double penalty provided by law for second offenders, upon Altmeyer, and both defendants appealed. After the appeals were lodged in this court, Robert Altmeyer withdrew his appeal and is now serving the sentence imposed upon him.

During the trial the defendants reserved three bills of exception, which are now urged by Robert McKee, the only remaining appellant.

### Bill No. 1.

This bill is based upon the fact that defendant was not served with a copy of the regular venire of section D of the criminal district court 48 hours before said jurors were called into section B of the court, as tales jurors, to complete the jury panel for the trial of this case. The overruling of defendant's objection to proceeding with the trial, for the reason stated, is the only question the bill presents. The crime of robbery is necessarily punishable by imprisonment in the state penitentiary, and may exceed seven years. Rev. St. § 992, provides that where the term of imprisonment may be seven years or more the defendant must be served with a copy of the information or indictment and the jury venire two full days before the trial of the case. This court has repeatedly held that section 992, Rev. St., does not apply to tales jurors. State v. Washington, 108 La. 227, 32 So. 396; State v. Bordelon, 113 La. 690, 37 So. 603; State v. Thompson, 116 La. 829, 41 So. 107; State v. Laborde, 120 La. 136, 45 So. 38. For cases in point in other jurisdictions, see 31 Cent. Dig. Jury, § 598.

There is no law which requires that tales jurors shall be drawn or summoned prior to

the trial. That is a matter within the discretion of the judge. Nor is there any law requiring that the progress of the trial shall be halted in order that an accused might be served with the list of talesmen summoned to complete the panel after the regular venire had been exhausted. The contention of counsel for defendant is that regular venires for all sections of the criminal court were drawn at the same time, and as, the judge of section B called in the regular venire drawn to serve in section D to complete the panel for the trial of this case, the defendant should have been served with a list of said jurors 48 hours before the trial. The judge followed the letter and spirit of article 201 of the Code of Criminal Procedure. The article is as follows:

"Whenever a petit jury for the Criminal District Court shall have been drawn, and before the trial of every cause, the criminal sheriff shall place in a box the names of the persons composing the said petit jury, and shall draw therefrom, in open court, by lot; and the order in which the names shall be * * * presented for empanelment; provided, in case the said panel should be exhausted, the names of the tales jurors shall be placed by said criminal sheriff in said box, and shall be drawn in open court, by lot, and said tales jurors shall be presented for empanelment in the same manner as herein provided for the regular panel of petit jurors.

"Provided further, that the judge of any Section of the Court wherein a case is being tried, if the jury panel in said Section of said Court is, or about to be, exhausted, before ordering the tales jurors to be summoned and drawn from the Jury Wheel, as provided in this Code, may, at his discretion, when jurors are serving on the regular or special panels, in other Sections of the said Criminal District Court, with the consent of the presiding Judges of said Section, have all of the panel of jurors, in any one, or all of the said Sections, who are not actually serving as petit jurors in the trial of a case report to his said Section of the said Court, as tales jurors, and when the panel of such Section of the said Court, so summoning the said jurors, is exhausted, their names shall be placed in the box provided, as aforesaid, for the selection of petit jurors, and drawn therefrom, in open Court, by lot, and the order in which the said names shall be drawn shall be that in which they shall be presented for impanelment as provided for the jurors of the regular panel, and those sworn and selected shall serve as though regularly summoned as tales jurors, and those not selected shall report back to the said Sections where they are serving until discharged.

"Provided further, that this is not to be construed as in any manner preventing the trial judge from ordering other tales jurors to be summoned, as provided for in this Code."

It is seen that the quoted article of the Code of Criminal Procedure provides two methods, for the parish of Orleans, for completing the jury, after the regular venire has been exhausted; one, by the regular drawing of talesmen from the tales jury box, and the other by calling, as talesmen, the regular venire drawn to serve in other sections of the criminal district court of that parish. The judge adopted the latter course in this case, and as he is authorized by Article 201 of the Code of Criminal Procedure to do so, and as the constitutionality of this article of the Code of Criminal Procedure is not questioned, we see no merit in this bill.

### Bill No. 2.

■ This bill is based upon three objections unsuccessfully urged by counsel for defendant, viz.: An objection to a statement made by the prosecuting officer in his opening

argument to the jury; an objection to the refusal of the court to order a mistrial of the case; and an objection to a remark made by the judge in the presence of the jury.

When the jury had been completed, the assistant district attorney, in compliance with article 333 of the Code of Criminal Procedure, announced to the jury the names of the witnesses for the state and summarized the testimony he expected each state witness to give. He named, among other state witnesses, Ferdinand Lafont, Sr., Ferdinand Lafont, Jr., and Le Blanc. He stated that these witnesses would testify that the accused spent the night before the robbery at the elder Lafont's camp near Little Woods; that said witnesses left the accused at the camp at 7:30 a. m. the morning of the robbery, and upon their return to the camp at noon of that day they found the accused there. He stated that he expected to prove by Ferdinand Lafont, Jr., that about dusk on the day of the robbery, Robert Altmeyer, one of the accused, caused him to put on a bathing suit, and, with a scoop net, go into the waters of Lake Pontchartrain, near the camp, and scoop up a number of envelopes or slips similar to pay envelopes which he expected to identify, by other witnesses, as the envelopes in which were contained the money, the subject of the robbery. The state closed its case without offering either of the Lafonts or Le Blanc as state witnesses, but did call Mrs. Peter Winkler, who testified that, on the day of the robbery, she saw Ferdinand Lafont, Jr., clad in a bathing suit, and with a net in his hand, go into the waters of the lake and scoop something therefrom. The state offered another witness who testified that he found a package of pay envelopes or slips under a bridge across the Dwyer Canal on the Downman or Little Woods road, and another witness who, after identifying the contents of the package,

testified that the names, numbers, and amounts typewritten on the face of the envelopes corresponded with his pay roll sheet of September 28, the date of the robbery, and that, prior to the robbery, he had placed in each envelope the sum of money typewritten on the face thereof. It appears that the defendants did not offer any testimony whatever. In the opening argument the assistant district attorney said:

"Now Gentlemen, referring to these envelopes or slips, which has been testified were taken out of the Dwyer Canal on the Dowman Road, couldn't it be inferred or the conclusion drawn, that these are the same envelopes that were taken from the waters of Lake Pontchartrain, by young Lafont, when it was said that he put on a bathing suit and with a scoop net went into the lake and scooped them out of the water at Little Woods at Lafont's camp."

The quoted statement of the assistant district attorney was objected to by counsel for the accused for the reason that the prosecuting officer had failed to call either of the Lafonts or Le Blanc to the stand as state witnesses, and he therefore requested the court to order the entry of a mistrial of the case. The court denied counsel's request and characterized it as ridiculous. The exact words of the court were, "That is ridiculous." Counsel excepted to this statement by the court and reserved a bill of exceptions both to the overruling of his request for the entry of a mistrial and to the language of the court.

It is not contended that the assistant district attorney is chargeable with bad faith or with any misstatement of the facts he expected to prove by the Lafonts and Le Blanc. The record does not disclose why the persons named were not called to the stand as witnesses. As the accused were convicted, we

may assume that when the assistant district attorney closed the state's case, in chief, he believed that the charge had been proven, beyond a reasonable doubt, without the necessity of offering further testimony; and as the defendants offered no testimony, there was nothing for the state to rebut. There is no law which requires the district attorney to cause all state witnesses, who are present in court, to testify. The opening statements of the district attorney, when made in good faith, are not prejudicial to the defendants. Nichamin v. U. S. (C. C. A.) 263 F. 880; People v. Reitz, 86 Cal. App. 791, 261 P. 526; Ragsdale v. State, 132 Ark. 210, 200 S. W. 802; State v. McDonald, 21 N. M. 110, 152 P. 1139; Nicholson v. State, 18 Wyo. 298, 106 P. 929; People v. Wong Hing, 176 Cal. 699, 169 P. 357; People v. Gleason, 127 Cal. 323, 59 P. 592, 593; People v. Searcey, 121 Cal. 1, 53 P. 359, 41 L. R. A. 157; People v. Donaldson, 36 Cal. App. 63, 171 P. 442; Shacklett v. State, 23 Okl. Cr. 4, 211 P. 1063; U. S. v. Stern (D. C.) 186 F. 854; People v. Davis, 26 Cal. App. 647, 147 P. 1184; State v. Rasco, 239 Mo. 535, 144 S. W. 449; Corpus Juris, vol. 16, § 2226, p. 890; State of Louisiana v. Joe Ricks, ante, p. 507, 128 So. 293, decided March 31, 1930.

It is our opinion that the argument of the assistant district attorney, to which defendant excepted and made the basis of this bill, was a legitimate inference to be drawn from the testimony of the three witnesses which we have summarized supra. We are also of the opinion that the judge's characterization of the defendant's request that a mistrial of the case be ordered as ridiculous was not prejudicial to the defendant.

"Not only error, but injury, must be alleged and shown to justify the reversal of a judgment." State v. Kennon, 45 La. Ann. 1192, 14 So. 187.

The rule that error and injury must be shown has especial force where there is no request that the error be corrected and no exception is taken to the charge to the jury.

### Bill No. 3.

This bill was reserved to the overruling of a motion for a new trial. Aside from a repetition of the grounds urged in the two bills we have disposed of, the motion merely contains an allegation that the verdict is contrary to the law and the evidence.

"A new trial cannot be obtained on the mere allegation that the verdict was contrary to the law and evidence." State v. Robertson, 133 La. 806, 63 So. 363, 365. See also authorities cited in 2 La. Dig. § 447 page 675.

For the reasons stated, the verdict and sentence are affirmed.