286 So.2d 345 (1973)
STATE of Louisiana
v.
Dan GILBERT, Jr.
No. 53390.
Supreme Court of Louisiana.
August 20, 1973.
Rehearing Denied September 24, 1973.
Concurring Opinion October 1, 1973.
*347 Kirby & McLeod, Robert P. McLeod, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Sp. Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., John R. Harrison, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant-appellant, Dan Gilbert, Jr., was tried and convicted of armed robbery. LSA-R.S. 14:64. He was sentenced to serve fifteen (15) years in the custody of the Louisiana Department of Corrections. Defendant has perfected this appeal, relying upon twelve (12) bills of exceptions to obtain a reversal of his conviction and sentence.
Bill of Exceptions No. 1
Defendant-appellant filed a motion to quash the bill of information, alleging that the general and petit jury venires were drawn in accordance with LSA-C.Cr.P. Art. 402. Defendant-appellant alleges that the exemption from jury service granted to women by Art. 402 "deprives defendant of equal protection and due process of law in violation of the Fourteenth Amendment to the United States Constitution by excluding said women from both venires." Bill of Exceptions No. 1 was reserved to the denial of this motion.
A majority of this court is of the opinion that the personal exemption granted to women by LSA-C.Cr.P. Art. 402 does not deprive a defendant of due process or equal protection of the laws. State v. Roberts, La., 278 So.2d 56 (decided May 7, 1973); State v. Enloe, La., 276 So.2d 283 (decided March 26, 1973); State v. Hill, La., 276 So.2d 286 (decided March 26, 1973). Bill of Exceptions No. 1 is without merit.
Bills of Exceptions Nos. 2, 4, 5, 6, 7 & 8
Bill of Exceptions No. 2 was reserved when the trial judge denied a defense motion to suppress identification testimony based on a photographic identification and a line-up. The other bills here considered were reserved when evidence obtained as a result of the photographic and line-up identifications was introduced at the trial over defense objection.
With regard to the denial of the motion to suppress the line-up identification and the objections made to this testimony at trial, which defense counsel has not *348 argued in brief, there is obviously no error on the part of the trial judge. Defense counsel was present when the line-up was held and at the motion to suppress he was given full latitude to present any alleged irregularities which may have occurred. We find that the trial judge did not abuse his discretion in denying the motion to suppress and admitting evidence of the line-up identification.
Defense counsel's main complaint is directed to the photographic identification procedure employed by the police. He alleges that there was a lack of physical similarity between the defendant's photograph and the other photographs that were shown to the witnesses.
The record reveals that at the hearing on the motion to suppress, each of the witnesses who had made a photographic identification was called. Each stated that he had viewed numerous photographs at the police station on the night of the robbery, but was unable to identify the perpetrators from among the photographs he viewed. Each witness also testified that he was shown a number of photographs by detectives some weeks later. All of the witnesses except one testified that they were unable to identify the perpetrators from this second group of photographs. About two weeks later, each witness was shown a third group of photographs, consisting of some nineteen pictures (including the defendant). Each witness testified that from this third group he was able to identify the picture of the defendant as being one of the armed robbers.
Defense counsel complains that several of the photographs depicted persons with facial hair (which defendant lacked) or different hair styles from those worn by the perpetrators of the robbery. The testimony of the witnesses establishes, however, that each witness was told that the robber's hair style or facial hair might have changed between the taking of the photograph and the perpetration of the robbery.
In State v. Chaney, La., 273 So.2d 259 (1973), we held that a factual determination by the hearing judge on the admissibility of a photographic identification will not be disturbed on appeal unless clearly contrary to the preponderance of the evidence.
Our review of the evidence in this case convinces us that the trial judge was correct in denying the defendant-appellant's motion to suppress and in admitting testimony concerning the photographic identification. We have examined the photographs which were displayed to the witnesses and we find that they were an extremely fair assemblage. Also, the procedure employed by the police at the photographic identification was not suggestive in any manner. The witnesses were merely given the group of nineteen photographs and asked if they recognized the armed robber in any of the pictures. These bills of exceptions are therefore without merit.
Bill of Exceptions No. 3
This bill arises out of an incident which occurred in the courtroom prior to the beginning of defendant-appellant's trial. Since the trial had not yet commenced, the Court Reporter was not operating the electronic recording machine. We therefore accept the recital of facts, stated by the trial judge in his per curiam to this bill of exceptions, as the basis for our review of this bill.
While reading the docket of cases scheduled for that day, the Assistant District Attorney referred to two charges against the defendant. Each charge was for armed robbery. To distinguish between them, he referred to one as the "Safeway" case and the other as the "7-11" store case.[1] This *349 reference by the Assistant District Attorney took place at a time when there was considerable noise and traffic in the courtroom, with people milling about and in and out of the spectators' area of the courtroom where the prospective jurors were seated. Defense counsel prior to the voir dire examination of the first prospective juror immediately moved for a mistrial. The trial court denied the motion and defendant-appellant then reserved bill of exceptions No. 3.
Defendant-appellant does not cite the statutory authority upon which he relied to reach his conclusion that a mistrial should have been granted in this case. Presumably, defendant relies upon C.Cr.P. Art. 770, which declares that a mistrial shall be granted when the District Attorney during the trial or in argument, refers to another crime as to which evidence is not admissible. In the case before us, the trial had not yet commenced. Article 770 is therefore inapplicable.
Despite the inapplicability of specific statutory authority for relief in an unusual situation such as this one, if there were substantial likelihood of prejudice to the rights of the accused as a result of this incident, we would not hesitate to overturn this conviction and order a new trial. We feel, however, that the trial judge was in the best position to judge the impact, if any, which this statement could have had on the prospective jurors.
The trial judge stated in his per curiam that even if a prospective juror would have heard the assistant district attorney (which was not likely under the existing conditions), it was unlikely that he would have comprehended what he heard. The judge characterized the setting in which the remarks occurred as one of "organized confusion". Furthermore, all jurors were repeatedly instructed (at the beginning of jury selection, at the time the bill of information was read to them, and at the conclusion of the trial) that a mere charge of criminal conduct against an individual is not evidence, and is not to be considered when determining his guilt or innocence.
Considering the circumstances in which this unintentional reference by the assistant district attorney took place and the fact that it was made prior to the commencement of voir dire examination when the prospective jurors were probably unable to comprehend all that was occurring we do not find that the defendant was prejudiced.
We therefore find this bill to be without merit.
Bill of Exceptions No. 9
Immediately after the State rested its case at the trial on the merits, the defendant-appellant moved for a directed verdict. The motion was denied by the Court, to which ruling the defendant-appellant reserved Bill of Exceptions, No. 9.
Defendant-appellant was declared indigent by the trial judge prior to the start of the trial. After his motion for a directed verdict was denied, defense counsel moved the court to supply him with a transcript of all evidence presented by the State in order that he could attach this transcript to his bill of exceptions. The trial judge denied this request and defense counsel reserved another bill of exceptions. This bill was also numbered Bill of Exceptions No. 9 by defense counsel.
We recognize, of course, that an indigent defendant is entitled to a free transcript where the grounds for appeal establish a "colorable need" for a complete transcript. Mayer v. Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed. 372 (1971). Thus, we must determine whether defendant-appellant has shown a "colorable need" for a complete transcript in light of the fact that his ground for appeal is the denial of a directed verdict.
In State v. Douglas, La., 278 So.2d 485 (decided May 7, 1973), this Court held that a motion for a directed verdict should be *350 granted when there is a total lack of evidence to prove a crime or an essential element thereof. Thus, where the State has proved a prima facie case, the trial judge is correct in denying a motion for directed verdict.
In this case, a partial transcript (consisting of testimony relative to the other bills of exceptions) was provided to the defendant-appellant free of charge. Included in that transcript was the testimony of several eye-witnesses to the armed robbery. This testimony was made a part of the record in support of defendant-appellant's Bills of Exceptions Nos. 2, 4, 5, 6, 7 & 8, supra.
From that testimony alone, it is clear that the State made out a prima facie case against the defendant. The testimony of Mr. Charles O'Corr, a victim of the robbery, is included in the record before this Court. That testimony is sufficient to support a denial of a motion for a directed verdict inasmuch as it establishes a prima facie case as to each essential element of the crime of armed robbery. The trial judge was correct in denying the motion for a directed verdict.
We also conclude that the defendant suffered no prejudice as a result of the ruling of the trial judge denying a complete transcript of the testimony, for had he been supplied with a complete transcript, his motion for a directed verdict would nonetheless have been denied, in view of the testimony of Mr. O'Corr, without more. Bill of Exceptions No. 9 is without merit.
Bill of Exceptions No. 10
This bill of exceptions was reserved by defense counsel to a statement made during closing argument by the State. The State argued as follows:
"Let me state that this is a very serious crime. Mr. McLeod has pointed out in both his opening statement and his closing statement the penalty. The penalty for this crime is irrelevant in that you gentlemen are not to decide the penalty this person is to receive. That job in this state is assigned to the Court. Your only job is to decide the question of guilty or innocence. The penalty that is appropriate is done by the Judge. It is not part of your function. However, I would tell you that this is a serious offense. Why, of course, it is a serious offense. Mr. O'Corr could well not be here today. If anything had happened in that armed robbery, as it so often does, the person, the victim, is not here to testify."
Defense counsel objected to the comment as follows:
"Mr. McLeod: Your Honor, I am going to have to object to that argument. It is another crime Mr. Harrison is talking about and has nothing to do with the armed robbery.
The Court: Objection is overruled.
Mr. McLeod: The defense requests a bill be reserved.
The Court: Let a bill be reserved."
Taken in context it is apparent that the statement of the prosecuting attorney was clearly hypothetical and was non-prejudicial. There is no risk that the jury considered the assistant district attorney's remark in connection with the defendant's case as they were properly instructed as to the elements of the crime charged on more than one occasion. Furthermore, the import of the remark is that there is always a possibility of grave injury or death incident to the commission of an armed robbery. The jury was certainly aware of this possibility due to the very nature of the crime charged and, therefore, the assistant district attorney's remark added nothing prejudicial to the defendant which did not already exist in the minds of the jurymen.
We find no reversible error in the ruling of the trial judge. The bill lacks merit.
*351 Bills of Exceptions Nos. 11 & 12.
After the trial, defendant filed a motion for a new trial. The motion alleged that the "verdict was contrary to the law and the evidence." It alleges that the eyewitness testimony of the four state witnesses was unreliable because of discrepancies in their identification of the defendant as a perpetrator of the robbery. The motion further alleges prejudicial error in the failure of the trial judge to grant the various pretrial motions filed by defendant-appellant. The motion for a new trial was denied, and Bill of Exceptions No. 11 was reserved to that ruling.
La.C.Cr.P. Art. 851(1) provides that one of the grounds for the granting of a new trial is where the verdict is contrary to the law and evidence.
According to the official revision comment, explaining Article 851(1):
"* * * a verdict contrary to the law and the evidence, is a ground on which the trial judge has a wide discretion and may order a new trial if he feels that the jury was wrong in convicting the defendant. It is the duty of the trial judge to pass upon the sufficiency of the evidence, and his refusal to do so is reversible error. State v. Daspit, 167 La. 53, 118 So. 690 (1928)."
Under our law, the trial judge may not comment on the evidence to the jury. LSA-C.Cr.P. Art. 772. He may, however, under the above provision, grant a new trial if the jury returns a verdict of guilty when his own analysis of the evidence indicates that the verdict was contrary to the evidence, i. e., there is reasonable doubt as to the guilt of the defendant. This power is exclusively vested in the trial judge. The Supreme Court is limited to a review of the law, and may not review facts in a criminal case. LSA-Const. Art. VII, Sec. 10. This limitation is expressed in LSA-C.Cr.P. Art. 858, which provides:
"Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for error of law."
Thus, we have uniformly held that a bill of exceptions reserved to the refusal of the trial judge to grant a new trial when the motion is based on Art. 851(1) presents nothing for our review. State v. Crockett, 262 La. 197, 263 So.2d 6 (1972); State v. Williams, 262 La. 160, 262 So.2d 507 (1972); State v. Landry, 262 La. 32, 262 So.2d 360 (1972); State v. Singleton, 252 La. 976, 215 So.2d 512 (1968); State v. Stokes, 250 La. 277, 195 So.2d 267 (1967).
The other grounds for the motion for a new trial was based on Art. 851(2). The defendant-appellant contended that the rulings of the trial judge denying the pretrial motions to suppress and motion to quash show prejudicial error. We have considered these bills of exceptions individually above and found them to be without merit. We therefore hold that the trial judge did not abuse his discretion in refusing to grant the motion for a new trial. Bill of Exceptions No. 11 is therefore without merit.
Bill of Exceptions No. 12 was reserved when the trial judge refused to order all of the testimony at defendant-appellant's trial transcribed free to be attached to the bill of exceptions taken to the denial of the motion for a new trial.
In State v. Randolph, La., 275 So.2d 174 (decided March 8, 1973) we held that where the defendant's motion for a new trial raises the contention that there is a total lack of evidence as to an essential element of the crime charged, an indigent defendant is entitled to a free transcript of all the testimony. Under such conditions, of course, a complete transcript is essential to proper review by this Court. In Randolph, we specifically stated, however:
"We do not hold, as a matter of law, that an applicant is entitled to a full transcript where he alleges the trial court abused *352 his discretion in denying a new trial on allegations similar to the present; we simply hold that this applicant is, where the allegations present a very close question which cannot adequately be reviewed without the full transcript."
In the case at bar, as we have previously held under our discussion of Bill of Exception No. 9, there is in the record, sufficient evidence to make out a prima facie case against the defendant as to each essential element of the crime. We therefore hold that the trial judge did not commit prejudicial error in denying a complete transcript to this defendant. Bill of Exceptions No. 12 is without merit.
For the reasons stated above, the conviction and sentence are affirmed.
MARCUS, J., concurs.
SUMMERS, J., concurs and will assign reasons.
SUMMERS, Justice (concurring).
Although I agree that the conviction and sentence should be affirmed, I do not approve of the decision in State v. Douglas, 278 So.2d 485 (La.1973), to which the majority refers, seemingly with approval. I shall adhere to the constitutional mandate that in a jury trial a judge cannot decide the guilt or innocence of an accused. The mandate is clear: "The jury in all criminal cases shall be the judges of the law and of the facts on the question of guilt or innocence...." La.Const. art. XIX, § 9.
The decision in State v. Douglas purports to uphold as valid a statute declaring that a directed verdict by the judge in a criminal jury trial is permissible; ruling that the statute (La.Code Crim.Proc. art. 778) authorizing that procedure was constitutional. Yet, in State v. Hudson, 253 La. 992, 221 So.2d 484 (1969), four years before, this Court declared that same statute unconstitutional finding that the constitutional prerogative of the jury was usurped by a directed verdict. If this Court is capable of such inconsistency, the hope is that another change will witness a return to constitutional principles.
Truly, ours is a government of men, but we can, and must, strive instead for the ideal of government by law, a fundamental principle to which America is dedicated.
Insofar as this opinion recognizes the validity of Article 778 of the Code of Criminal Procedure as upheld in State v. Douglas, I must record a continuing disapproval until the constitution is amended. My obligation and oath to uphold and defend the constitution requires this stand.
Conceding arguendo, however, that the directed verdict is constitutionally permissible, this decision purports to say that where the State proves "a prima facie case"[*] the trial judge may deny a motion for directed verdict. For the first time, I dare say, in the history of the jurisprudence of this State, the standard of "a prima facie case" is fixed as a basis for a verdict in a criminal prosecution.
When a jury deliberates it must find the defendant guilty beyond a reasonable doubt. La.R.S. 15:271; La.Code Crim.Proc. art. 804. But the judge, in ruling on a motion for directed verdict, according to this decision, need only ascertain whether the State has made out a "prima facie case"; if so the defendant's motion cannot be granted; if not the directed verdict must be granted. I submit that if a directed verdict is to be permitted, the judge must be guided by the same standard in determining innocence which the law imposes upon the jury. The defendant is either guilty beyond a reasonable doubt or he must be discharged. The State does not discharge its burden by proving a prima facie case. The double standard cannot be permitted to exist.
Nor do I agree that the trial judge may "grant a new trial if the jury return a verdict *353 of guilty when his own analysis of the evidence indicates that the verdict was contrary to the evidence, i. e., there is a reasonable doubt as to the guilt of the defendant."
As I understand this proposition it is not so simplistic. Aside from the other grounds assigned by Article 851 of the Code of Criminal Procedure, the allegation that the verdict is contrary to the law and the evidence presents nothing for consideration. Insofar as this ground is concerned a new trial may be granted by the trial judge only when the motion sets forth that there was no evidence "at all" to prove an essential element of the crime. The allegation that the verdict is contrary to the law and the evidence is a mere conclusion; it sets forth no legal basis for the judge to review the validity of the jury verdict.
To permit the judge to set aside a verdict of the jury on a question of guilt or innocence is to again usurp the jury's prerogative as "the judges of the law and of the facts on the question of guilt or innocence." La.Const. art. XIX, § 9. State v. Bueche, 243 La. 160, 142 So.2d 381 (1962); State v. Garner, 241 La. 275, 128 So.2d 655 (1961); State v. McDonell, 208 La. 602, 23 So.2d 230 (1945); State v. Disotell, 181 La. 149, 158 So. 825 (1934); State v. McKee, 170 La. 630, 128 So. 658 (1930); State v. Robertson, 133 La. 806, 63 So. 363 (1913).
When an allegation is made that there is no evidence at all to establish an essential element of the crime charged, a question of law is presented whether it is lawful to convict an accused without any proof whatsoever as to his guilt. State v. Nomey, 204 La. 667, 16 So.2d 226 (1943). Thus it is only where there is no evidence at all upon some essential element of the crime charged that the court may set aside a verdict and grant a new trial. State v. Holder, 159 La. 82, 105 So. 232 (1925); State v. McDonell, 208 La. 602, 23 So.2d 230 (1945). But where there is some evidence to sustain the conviction, no matter how little, the judge cannot pass on the sufficiency thereof. That comes within the exclusive province of the jury. State v. Gani, 157 La. 231, 102 So. 318 (1924).
It may not be said that the judge does not usurp the prerogative of the jury when, after the jury has returned a verdict of guilty, the judge grants a new trial because he has determined, contrary to the jury verdict, that the accused at the bar is not guilty, and in that respect "the verdict is contrary to the law and evidence." La. Code Crim.Proc. art. 851(1).
The basis for the constitutional prohibition should be clear. It is in effect a denial of trial by jury to permit the judge to substitute his judgment on credibility of witnesses, weight of evidence and other fact determinations bearing upon guilt or innocence.
I concur in the result only.
NOTES
[1] In its brief, the state notes that both counsel for the state and for the defendant had become accustomed to referring to these cases as the "Safeway case" and the "7-11 case", rather than to the docket numbers during the pre-trial Motion to Suppress, which was tried several days before the trial on the merits. The state therefore claims the reference was a good faith attempt to distinguish which case was being tried that day.
[*] Prima facie, such as will suffice until contradicted and overcome by other evidence. Black Law Dictionary (4th ed. 1957).