[Crim. No. 820.  Department Two.—December 31, 1901.]

## THE PEOPLE, Respondent, v. F. M. CHRISMAN, Appellant.

CRIMINAL LAW—GRAND LARCENY—SUPPORT OF VERDICT—CLAIM OF PURCHASE—GOOD CHARACTER OF BOY.—Upon a conviction of grand larceny, where there was substantial evidence to show that the taking was felonious, and with knowledge that the prosecuting witness owned the property, and was not, as claimed by the defendant, a purchase of the property from another person in good faith, believing him to be the owner, a verdict of guilty will not be disturbed, notwithstanding the crime was committed by a boy twenty years of age, who, by his own exertions, had acquired a good education, and had accumulated considerable property, and had borne a good reputation prior to the commission of the offense.

ID.—EVIDENCE—STATEMENTS OF DEFENDANT UPON PRELIMINARY EXAMINATION.—Statements of the defendant, made upon the preliminary examination before the magistrate, which were inconsistent with other statements concerning the employment and residence and identity of the man from whom he claimed to have purchased the property charged to have been stolen, which purchase was his sole defense, were admissible and material evidence upon the question of guilt, aside from any question of impeachment.

ID.—IMPEACHMENT—STATEMENT AS TO SEARCH AND INQUIRIES—CONTRADICTION IN REBUTTAL.—Where the attention of the defendant

was called, upon his cross-examination, to statements made by him upon his preliminary examination, as to his search for the vendor of the property, and that he made inquiries of certain persons named, and acknowledged that he so testified, a person so named may testify in rebuttal, that he had no recollection of seeing the defendant on or about the time testified to.

ID.—CONFLICTING STATEMENTS—IDENTIFICATION—IMMATERIAL MATTER—PRESUMPTION AGAINST PREJUDICE.—Evidence shown to the witness as given on his preliminary examination may be used either for the purpose of contradicting testimony given by him upon the trial, or for the purpose of laying a foundation for impeachment. But when the evidence given on the preliminary examination is not so marked by quotations as fully to distinguish it from the evidence given on the trial, and appellant contends that it included immaterial matter not showing contradictions, which matter was not specified, it will be presumed that such immaterial matter did not prejudice the defendant.

ID.—CONTRADICTION UPON IMMATERIAL MATTERS—DEFENDANT NOT INJURED.—The allowance of two different questions, asked for the purpose of contradicting a witness for the defendant upon immaterial matters, is not injurious to the defendant, where no attempt was made to contradict the witness on one of the questions asked, and where the contradiction proved in answer to the other question was wholly unimportant, and would not justify a reversal of the judgment.

ID.—EVIDENCE OF GOOD CHARACTER—STEADINESS—DRINKING—HONESTY.—Evidence as to the good character of the defendant, as to steadiness and drinking, was properly excluded; and the evidence of good character was properly confined to the defendant's previous reputation for honesty, which was involved in the charge made against him.

ID.—NEW TRIAL—CUMULATIVE EVIDENCE—FAILURE TO MOVE FOR CONTINUANCE.—A new trial will not be granted for the admission of cumulative evidence which is not so material as to indicate a probable change of result, even though the search for it may have been ground for a continuance, if it had been applied for. The failure to move for a continuance to allow search for a witness, whose identity and importance, as vendor to the defendant, were testified to at the trial, is suggestive of the conclusion that finding him would not have aided the defense; and affidavits of other persons showing that there was such a man, without introducing his affidavit or showing any further facts than was testified to upon the trial, are insufficient to justify a new trial.

APPEAL from a judgment of the Superior Court of Kings County and from an order denying a new trial. M. L. Short, Judge.

The facts are stated in the opinion.

Letus N. Crowell, and E. T. Cosper, for Appellant.

Tirey L. Ford, Attorney-General, and A. A. Moore, Jr., Deputy Attorney-General, for Respondent.

HAYNES, C.—Appellant was convicted of the crime of grand larceny and sentenced to imprisonment at San Quentin for the term of three years and six months, and appeals from the judgment and from an order denying a new trial.

The property charged to have been stolen consisted of thirty-eight stands of bees, of the value of $152, the property of one H. A. Crane.

That the bees were taken and removed from the premises of Mr. Crane by the defendant is not disputed, and that they had been the property of Mr. Crane is conceded. The defendant claims, however, that he purchased sixty stands of said bees from one E. G. Williams, for $156, and had hauled away one wagon-load of thirty-eight hives, the same that are mentioned in the information. Mr. Crane testified that he had altogether at that place—the Bartram ranch—one hundred and seven stands of bees; that he visited the bees on March 18th last, and found several stands missing, and discovered the track of a wagon, and followed it to the apiary of the defendant's father, and there found the wagon, with most of the bees still upon it. They were hauled away in the night, but it was shown that was the better and usual time for hauling bees.

The only material question, upon the merits, is whether the taking was felonious, and that question depends upon the circumstances and the truth of defendant's statement that he purchased them in good faith from E. G. Williams, believing that Williams was the owner. Williams, however, was not produced as a witness by either side, though both appear to have sought him diligently.

It is not necessary to discuss the evidence at length. If it appears that there was a substantial basis in the evidence for the conclusion of the jury that the defendant is guilty, the verdict must stand.

The circumstances disclosed in the evidence show that defendant knew that the bees in question had belonged to Mr.

Crane. It does not appear that E. G. Williams was a resident of that vicinity, nor, indeed, that he had a known residence anywhere. The defendant testified that Williams had worked for him, but he did not know of any one that knew him during the two years that they were in business around Newman.

The defendant, however, introduced two letters which he testified he had received from E. G. Williams, the first dated at Newman, January 28, 1901, and which is as follows: "F. M. Chrisman, Sir: I will write you this letter to let you know what I am doing. I intend to start moving the bees next week, provided I can get a team. Freed, if you see any one that would like to buy some bees send them to me as I have about 110 hives over at Hanford that I would like to sell; I have as many here as I can take care of to advantage. Well we are all having some cold weather here now. Hoping to hear from you soon, I remain, E. G. Williams."

The second was dated at Newman, on February 24, 1901, and reads as follows: "F. M. Chrisman, Sir: Yours of recent date at hand and will say that I have, as I said before, about 110 hives south of Hanford about two miles. If you want them, meet me in Fresno the 4th of next month and we will go down and see and look at them. See me in the Owl Saloon at 1:30 P. M. E. G. Williams."

These letters were post-marked at Newman, as the sending office, and at Laton, as the receiving office, and defendant testified to the genuineness of these letters, and put them, and the envelopes in which he testified that he received them, in evidence. It was proven that the stamps upon the envelopes were not the stamps of either of said offices, and that the letters and stamps were manufactured. This is conceded by his counsel, who put them in evidence, innocently believing they were genuine.

This is a sad case. The defendant is a boy of but twenty years. By his own exertions he had acquired a better education than the average country boy, had also accumulated considerable property, and bore a good reputation. The recommendation of the jury to the "extreme mercy of the court" shows the pity the jury had for the boy, and the deep conviction they had of his guilt, and we think the evidence justifies their conclusion.

Appellant further contends that the court erred in permitting to be read to the jury certain portions of the testimony given by the defendant on his preliminary examination before the magistrate, in relation to said Williams.

The district attorney, upon the trial, had called several witnesses to testify to the statements made at and immediately before and after defendant's arrest and prior to his examination, touching the employment of Williams, his residence, etc., and upon the trial the district attorney put in evidence certain portions of the testimony of defendant claimed to be inconsistent with his prior statements. This evidence was not offered for the purpose of impeachment, but as substantive evidence of his guilt. Neither the taking of the bees nor the ownership of Crane was disputed, and the sole defense depended upon the alleged purchase of them from Williams, and hence defendant's statements whenever made touching his purchase of them, and of the identity and residence of Williams, was material and substantive evidence, and was rightly admitted.

2. When the defendant was on the stand as a witness in his own behalf, and was being cross-examined by the district attorney, he was shown a specified portion of the transcript of his testimony upon his preliminary examination, and in response to a question whether he so testified, replied that he did. It was then offered in evidence, and was received over the objection of counsel for defendant. The substance of the evidence thus shown the witness was, that prior to the preliminary examination he went in search of Williams, and made inquiries of certain persons, who were named, the object being to impeach the defendant as a witness; and John Kerr, one of the persons of whom defendant testified he made inquiries, was afterward called in rebuttal, and testified that he had no recollection of seeing the defendant on or about the date given. The ruling was not erroneous.

3. Two other similar specifications of error in the admission of evidence are made. The testimony admitted by the witness to have been given is not so set out by quotation-marks on otherwise as to distinguish it from evidence given upon the trial. The witness appears to have been fairly treated. He was shown the testimony given upon preliminary examination, and admitted he gave it. It was competent for the purpose

of contradicting testimony given by him upon the trial, or for
the purpose of laying the foundation for impeachment. It is
said by appellant, however, that in the matter thus introduced
there was some "immaterial matter not showing contradic-
tions"; but such matter is not specified, and we may infer
that if it did not involve contradictions, it did not prejudice
the defendant.

4. J. C. Martin, who assisted defendant in hauling the bees,
while waiting with the team for defendant to come up, had
some conversation with a man who was passing, and was asked
by the district attorney, on cross-examination, the following
question: "Did you at that time say to this man who came by
that you were going into the country to work for a man?"
Defendant objected on the usual grounds, and that it was not
in the presence of defendant. It was said in reply that it was
for the purpose of contradicting the witness, and the objection
was overruled. It is now urged that the court erred, because
the witness could not be contradicted upon an immaterial mat-
ter. If it be conceded that the court erred in overruling the
objection, it is clear that the defendant was not injured. No
attempt was made to contradict the witness upon that point.

5. The following question was put to said witness Martin
by the prosecution, upon cross-examination: "When you
were walking away at the Taylor ranch what conversation did
you have with the deputy sheriff?" Before this question
was answered the further question was put: "Did he ask you
this question: How did you get into the place where you got
the bees?" Defendant objected on the usual grounds, and the
further grounds that the conversation was not shown to have
been in the presence of the defendant, and that defendant had
not asked the witness about any conversation between him and
Ayers. The court remarked that he understood the district
attorney was laying the foundation for impeaching the wit-
ness, and on that ground overruled the objection, and defend-
ant excepted.

It is not necessary to discuss this exception, since if it were
conceded that the court erred, the contradiction proved was
wholly unimportant, and would not justify a reversal of the
judgment. It involved the question whether the witness who
drove the wagon said to Ayers that they went and came the
same way; "that they went through a gate and came back

through a gate." It had been conceded before these questions were put that the wagon did not go and come by the same route, and a map showing that fact was stipulated to be correct, and this examination of the witness could not add force to the contradiction already made.

6. It is insisted by appellant that the court erred in refusing to allow the question put to the witness Fannie Chrisman: "What were the boy's habits as to steadiness, drinking, or anything of that sort?" This question did not touch his character or reputation for honesty, which was the trait involved in the charge made against him. (*People* v. *Ashe*, 44 Cal. 288.) Evidence tending to show the defendant's previous reputation for honesty was received.

7. The court did not err in refusing to give the twenty-fourth instruction requested by the defendant, upon the subject of "good character." The twenty-third instruction, which was given, fully and correctly stated the law upon the subject.

8. In support of defendant's motion for a new trial, upon the ground of newly discovered evidence, several affidavits were read, and it is urged that his motion should have been granted upon that ground.

In the first place, these affidavits were merely cumulative. They were intended to show that there was such a man as Williams. The defendant testified fully in regard to him, and to his purchase of the bees from him. Frank Ross, a witness called by defendant, testified that he knew a party by the name of E. G. Williams; that he met him at Collis in June, and in Fresno about the first of March, and heard defendant and Williams in conversation, and that their talk was about bees. The affidavits go no further, and most of them not nearly so far. It is quite clear that if these persons had been present and testified to the matters stated in their affidavits, it would not have changed the result, since the mere existence of a man named E. G. Williams does not go far enough. If the affidavit of the defendant in support of his motion for a new trial had been presented before the trial in support of a motion for a continuance, there is little doubt that it would have been granted. The bees were taken the night of March 17th, and the trial was had April 18th, leaving a very short time for a search for an almost indispensable witness, and the fact that

no motion for a continuance was made for the purpose of continuing the search is strongly suggestive of the conclusion that finding him would not have aided the defense.

I advise that the judgment and order appealed from be affirmed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

Henshaw, J., McFarland, J., Temple, J.

Hearing in Bank denied.