[Crim. No. 360.   Second Appellate District.—February 25, 1915.]

## THE PEOPLE, Respondent, v. WILSON E. DAVIS, Appellant.

CRIMINAL LAW — MURDER — CIRCUMSTANTIAL EVIDENCE — SUPPORT OF VERDICT.—In this prosecution for murder, it is *held* that, while the proof against appellant was wholly that adduced from circumstantial evidence, it cannot be said that the verdict was not warranted by the evidence.

ID.—NEW TRIAL — NEWLY DISCOVERED EVIDENCE — ABILITY TO PROCURE AT TRIAL—CUMULATIVE TESTIMONY.—It is not error to refuse to grant a new trial on the ground of newly discovered evidence, where it is not sufficiently shown that the testimony could not have with reasonable diligence been procured at the trial, and it is shown that it was in its nature cumulative.

ID.—MISCONDUCT OF DISTRICT ATTORNEY — MISSTATEMENT OF TESTIMONY IN ARGUMENT—WHEN NOT PREJUDICIAL.—Misconduct on the part of the district attorney in his argument in misquoting testimony in one instance is not prejudicial, where the court by its general instructions charged the jury that neither the opinions of counsel nor any statements of fact made by them are to be considered.

ID.—OPENING STATEMENT OF DISTRICT ATTORNEY—FAILURE TO SUPPORT BY EVIDENCE.—The promise of the district attorney in his opening statement to prove things which he failed to support by evidence is not reversible error.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

Walton J. Wood, Public Defender, David R. Faries, Assistant Public Defender, and Charles J. Kelly, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

JAMES, J.—Defendant was convicted of the crime of murder and sentenced to be imprisoned in the state prison for the remainder of his natural life. An appeal has been taken from the judgment and from an order denying a motion for

a new trial. The person alleged to have been the subject of the homicide was one William G. Wheeler.

The proof against appellant was wholly that adduced from circumstantial evidence. Deceased was a man between the ages of forty-five and fifty years and was engaged with the appellant, who is an old man over the age of seventy-three years, in conducting, in a small way, a photograph business at the town of Sawtelle in Los Angeles County. It appeared in the evidence that appellant first met the deceased at Long Beach and there the two became very friendly, with the result that they arranged to go to Sawtelle and engage in the business mentioned together. They took up their residence at the latter place some time in November, 1913. So far as the evidence shows, the men continued together amicably up to the time of the death of Wheeler. On the morning of January 1, 1914, at about the hour of 5 o'clock, the small frame building in which the two men lived was discovered to be on fire. At the time the fire was first noticed it had made great progress and the interior of the building was already well burned. The fire was not checked and it shortly reduced the house to ashes, and in the embers thereof was found the charred and burned body of the deceased. The body was then badly mutilated by the fire, both arms and both legs having been burned away. Appellant was not in the building at the time of the fire, but was discovered at the scene about the hour of 10 o'clock. His demeanor was described by some witnesses as being "nervous," and it was discovered that his mustache and eyebrows had been singed as though by fire. When accosted and when an inquiry was made of him as to how it happened that his mustache and eyebrows had been burned, he stated that on the day before, while he and the deceased were preparing their meal, a defective gasoline stove flared up and caused the singeing which had been noticed. He further stated, so the testimony runs, that he had been at Garvanza the night before and had not returned to Sawtelle until after the building had been burned. Testimony was introduced showing that in December, immediately preceding the death of Wheeler, appellant had appeared at the office of a life and accident insurance company and had there requested information as to different kinds of policies which might be issued, and had finally taken away with him an application blank which he later returned. He had stated to

the insurance agent that he wished to take out a policy on the life of Wheeler, and asked whether he could be made the beneficiary in the policy. The agent replied to him, so the former testified, stating that no one but close relatives were allowed to become beneficiaries in accident policies, but that it might be made in favor of the insured's estate. Appellant, about the twenty-fifth day of December of the year mentioned, returned the application blank, a portion of which he had filled in—that portion furnishing details as to the name, age, weight, etc., of Wheeler. The agent completed the application and later issued a policy on the life of Wheeler for the amount of three thousand five hundred dollars, which was forwarded to appellant at Sawtelle. Appellant had stated to this agent that he desired to act as broker in the matter and to receive a commission, which privilege was accorded him. Early in the same month appellant took out a policy of fire insurance on the contents of the building occupied by himself and Wheeler. About ten days after the fire occurred, appellant appeared at the office of the accident insurance company with an attorney for the purpose of endeavoring to collect money on the policy which had been taken out on the life of Wheeler. The agent testified that appellant stated that he had come to collect on the policy; that Wheeler had been burned up in the house at Sawtelle, the policy burning with him. That Davis then said that Wheeler owed him two hundred dollars, but when it was called to his attention that he had stated when the application was made that Wheeler owed him about three thousand dollars, he changed his statement and said, "Yes, that's right." There was testimony furnished by the operatives of an electric car which left Los Angeles some time between four and five o'clock on the morning of January 1st, to the effect that a man answering the description of appellant rode from Los Angeles to Sawtelle on that morning, and that the car arrived at the latter place at about ten minutes before five o'clock. It was shown with reasonable certainty that the fire was in progress at five o'clock, and it was also shown that the operatives of the car were probably mistaken as to the time they arrived at Sawtelle that morning and that in fact the car referred to did not arrive at the place mentioned until a time considerably after the hour of five o'clock. It was proved without contradiction that defendant had registered at a hotel in Los Angeles

on the night of December 31st at about seven or eight o'clock. No person other than himself gave any testimony as to when appellant left that hotel. He himself testified that he remained there all night and that when he returned on the car to Sawtelle the next morning the house he had occupied had been entirely destroyed by the fire. He testified that a woman remained with him in the hotel that night, but he could neither give her name nor tell where she lived, and did not produce her to corroborate his statements. The jury evidently concluded either that the defendant had killed Wheeler before he left Sawtelle on the afternoon of December 31st, or that he had returned some time during the night and murdered the man and arranged for the fire to burn down the house. It was shown that appellant had purchased five gallons of coal oil shortly before the fire and a like quantity some days prior to that time. This circumstance was but a small one, as it was shown that the men had used both gasoline and oil stoves in their building. To give some point to one of the theories of the prosecution that Wheeler had been struck on the head, a physician who made an examination of the skull of the deceased about two weeks or more after the tragedy had occurred, testified that he found in the posterior portion of the skull about an ounce of colored liquid which he was of the opinion was blood and which he believed had been deposited there through a hemorrhage of one of the blood vessels of the brain. He said, however, that he could not say that the skull had been fractured, but testified that the skull had been so badly burned, especially in the frontal portion thereof, that it crumbled in his hands when he attempted to remove it in the usual way of surgeons. He was asked whether it were not possible that this blood had oozed from the brain during the time it had had an opportunity to decompose, and he stated that that condition was not indicated, because if such had been the case the blood would not have appeared in one spot only. At the time of his arrest there was found in the possession of appellant two promissory notes; one payable to appellant and apparently signed by the deceased Wheeler for the sum of nine hundred and eighty-eight dollars, and another for the sum of two thousand dollars, to which no signature was attached. There was testimony of a witness who appeared as a handwriting expert to the effect that, in his opinion, the signature of Wheeler on the promissory note

for nine hundred and eighty-eight dollars was in the hand-
writing of Davis. This, in brief, was the evidence upon
which the conviction of appellant was secured. There was
some other testimony as to statements made by appellant after
the fire which had some pertinency to the charge under in-
vestigation, which statements were in the main given in the
way of explanation or refutation of hints made to appellant
as to the opinion of different persons regarding the cause of
the fire, or in answer to interrogatories put by such persons.
None of these statements, however, so made by appellant,
amounted to an admission of his connection with the alleged
murder. Both men had been seen on the afternoon of Decem-
ber 31st at Sawtelle, and so far as appears both acted in the
ordinary and usual way. On the part of the defense, appel-
lant testified that the promissory notes had been drawn in
good faith; that Wheeler signed the nine hundred and eighty-
eight dollar note which covered an amount owing to appel-
lant by Wheeler; that the two thousand dollars represented
the price of some mining claims which Wheeler had agreed
to purchase from appellant. In explaining why the last note
was unsigned, appellant testified that he had drawn both
notes; that Wheeler had signed the nine hundred and eighty-
eight dollar note and had printed his name in red ink on the
two thousand dollar note. The printing and the red ink being
unsatisfactory to appellant, he had torn the note up and had
asked Wheeler why he did not write his name as there was
plenty of ink. Appellant said that he later wrote another
two thousand dollar note which it was his purpose to have
Wheeler sign. The jury in the case had the right to consider
all of the testimony, introduced on behalf of the prosecution
in proof of circumstances, to be true, and to draw all natural
and logical inferences and deductions that might reasonably be
drawn therefrom. So considering the evidence, they had the
right to conclude that appellant, intending to profit by the
death of Wheeler and the burning of the house, had taken out
the insurance upon the life of Wheeler and upon the contents
of the building; that he had murdered Wheeler either before
he (appellant) left Sawtelle for Los Angeles on the evening
of December 31st, or that he had returned to Sawtelle after
having visited Los Angeles, and committed the murder. Ap-
pellant produced no testimony in corroboration of his state-
ment as to when he left the hotel where he registered on the

evening of December 31st. He appeared at the scene of the fire at about 10 o'clock. The testimony of the prosecution tending to show that he went to Sawtelle on the paper train between 4 and 5 o'clock on the morning of January 1st could not reasonably have had influence with the jury as indicating that the murder was committed after appellant's arrival at Sawtelle, for the fact seems to have been quite definitely established that the fire was in progress at the time that the car arrived at the town where deceased and appellant lived. As it appeared that Wheeler on the day preceding the tragedy was in his customary health, so far as could be observed, the jury had the right, considering all of the circumstances, to conclude that he must have been killed before the house was fired. The public defender, who presented the case for appellant to the jury in a very capable manner, has here filed a brief in which he has summarized the points on which he relies for reversal and supported them with able argument.

At the outset and before considering the various other contentions advanced, it may be admitted that had the jury brought in a different verdict and one more favorable to the appellant, it could not reasonably have been said that such verdict was unjustified or unsupported. Neither can it be said, on the other hand, that viewing the chain of circumstances, all of which tended to show defendant's connection with the crime committed, the jury's verdict in fixing the responsibility for the tragedy upon this appellant was not warranted by the evidence.

The motion for a new trial was based in part upon a claim of newly-discovered evidence. A number of affidavits presented the testimony which it was claimed could be produced upon a new trial. Examining each of these affidavits it cannot be said, in the first place, that the showing was such as to compel the conclusion of the trial judge that all of the testimony could not have with reasonable diligence been procured at the trial. Further than this, such testimony then alleged to be available was in its nature cumulative to the testimony given on behalf of appellant at the trial and designed to be used in contradiction of the assertions of witnesses who had testified. Such being the character of the proposed testimony, the refusal of the court to grant a new trial on account of it was not error. (*People* v. *Chrisman,*

135 Cal. 282, [67 Pac. 136]; *People* v. *Holmes,* 126 Cal. 462, [58 Pac. 917].)

Alleged misconduct of the district attorney constitutes one of the grounds for error as claimed by appellant. The district attorney in one instance did misquote testimony. He stated that a witness had testified that the defendant had said that his mustache and eyebrows had been burned before the fire while he and Wheeler were getting dinner, and that a third person named Brashear was there. The district attorney in his argument inquired why the defense had not produced Brashear. The witness referred to had not testified that the defendant had said that Brashear was there. However, the jury had heard the testimony and their duty was not to take the statement of either counsel as to what the evidence was or what testimony had been given, but to rely upon their own recollection as to that matter. When counsel objected to this erroneous statement and asked the court to instruct the jury to disregard it, the trial judge replied that the general instructions would cover the matter. In these instructions the court did tell the jury that the opinions of counsel were not to be considered, nor any statements of fact made by them nor by the judge of the court. In other words, they were told in sufficiently plain language that they should take the testimony as given by the witnesses and form their conclusions therefrom as to the facts. This erroneous statement of the district attorney is not like the one referred to by appellant as having been sufficient to justify a reversal in the case of *People* v. *Smith,* 121 Cal. 355, [53 Pac. 802]. In that case the court confirmed the statement of the district attorney by agreeing that the latter had expressed the facts of the subject then being discussed. In this case the court gave no approval of the erroneous statement of the district attorney; on the contrary, he lent the weight of his instructions to the appellant's side by cautioning the jury regarding their duty in considering the evidence.

The contention that the district attorney in his opening statement promised to prove things which he failed to support by the evidence, does not amount to reversible error. Such preliminary statements, as was this one, are always qualified with the announcement that counsel "expect to prove" the things which they enumerate. The instructions to the jury were that they should only consider matters in evidence

before them. As to any of the charges of misconduct, where it may appear that the prosecuting officer overstated or misstated any of the matters complained of, his action in so doing bears not the color of willfulness nor a purpose to deceive or mislead the jury.

It is further claimed that the district attorney improperly questioned the appellant in an endeavor to prove that the latter had previously been convicted of a felony. We have examined carefully the testimony on this branch of the case and we find no matter brought out therein on the cross-questioning of appellant which was not in direct response to his examination as made by appellant's own counsel. The district attorney was justified in arguing to the jury that defendant had offered to settle his claim on the accident policy for the sum of two hundred dollars. It was shown in evidence that appellant visited the insurance agency after the fire, and that appellant's attorney (not either of counsel in this case), in defendant's presence, made the remark to the agent that "all that the defendant wanted was practically $200, which was the amount which his partner was indebted to him." Other items as to alleged misconduct in the argument of the district attorney do not require specific mention as, in the view we take of them, they did not constitute such misconduct as would create prejudicial error.

One of the efforts of appellant in making out his defense was to establish that one Cook, an alleged nephew of deceased Wheeler, had acted in a suspicious manner at the time of and after the fire. This was in the endeavor to show to the jury a likelihood that Cook had committed the crime with which appellant was charged. It having appeared that an attorney named Ritchey had been consulted by Cook after the death of Wheeler with regard to Wheeler's estate, on cross-examination Ritchey was asked whether Cook had not given the witness a list of the heirs of Wheeler, and left out the names of sons and daughters of Wheeler. This question was objected to by the people and the objection was sustained. As the attorney-general argues, the objection was properly sustained on the ground that it was not proper cross-examination; and the ruling of the court refusing to allow the witness to be recalled for direct examination on behalf of appellant was not error, as the circumstance sought to be elicited was so remote as constituting any evidence that Cook had committed

the crime with which appellant was charged, as to be inadmissible.

Exceedingly close scrutiny has been given to the voluminous record presented upon this appeal, not only because of the fact that appellant was convicted of the most serious crime of murder, but because of the further fact that his conviction rests upon proof only of circumstances which his counsel has so earnestly contended were not sufficient to justify the verdict. The case presented, in brief, is one where we must conclude that if the jury believed the testimony introduced by the prosecution they were warranted in finding appellant guilty as charged. That they did so believe that testimony, notwithstanding the fact that there was contradictory evidence, must be implied from the verdict which they returned in the case.

No reversible error appearing, the judgment and order appealed from are affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 26, 1915.