SOMMERYILLE, J.
Telesfort Major and his son, Berthier Major, were jointly indicted for stealing a certain heifer June 28,1913, alleged to have belonged to the succession of Joseph St. Romain. Berthier was acquitted, and Telesfort Major was convicted.
July 2, 1913, two sons of Joseph St. Romain reported the theft of the heifer to the sheriff and the district attorney; but defendants were not indicted until the meeting of the grand jury in the month of October following.
It appears that Joseph St. Romain was alive at the time of the theft, June 28, 1913; and that he died July 16, 1913; and that prior to his death, June 13th, he shot Berthier Major in the hand.
July 11, 1913, Telesfort Major was shot and badly wounded, and his son Felix was shot to death from ambush.
Berthier Major made an affidavit against Joseph St. Romain, Jr., charging him with the murder of his brother and the shooting of his father. Joseph St. Romain, Jr., was imprisoned, released on bond, and, on an. investigation by the grand jury, no true bill was found against him. '
This short narration of facts suggests that there was a feud existing between the Majors and the St. Romains.
[1] -While I-Iebrard St. Romain was under cross-examination, as a witness for the state in this case, he stated, in answer to questions propounded to him, that the members of his family and those of the Major family were not friendly, and that they did not speak to one another. That enmity existed between the two families, and that he (witness) would like to see defendants convicted. 1-Ie was thereupon asked:
“How did Felix Major come to his death?”
Objection was made by the state on the ground of irrelevancy, and the objection was sustained; to which ruling a bill of exceptions was reserved. Counsel for the accused stated to the court that the purpose of the testimony was to show that a feud existed between the St. Romain family and that of the accused, and that.the witness and other state witnesses were biased and prejudiced against the accused, and that they were actuated by malice and a spirit of revenge.
The court states in its per curiam, as reasons for sustaining the objection made by the district attorney, that the witness Hebrard St. Romain—
“having admitted that he and the other members of his family were inimical to the defendants, were prejudiced against them, and that he wanted to see the defendants convicted, I could see no possible- purpose that could be served, no possible light that could be thrown on the issues involved in the case,, by the admission of evidence going to show why that enmity and prejudice existed.
“This evidence would only have served to prove a state of mind and a condition which the witness had readily admitted was true, to wit, prejudice and ill will on the part of the witness and other members of his family toward the members of the Major family, and especially *777 toward the two defendants. This would have prolonged the trial interminably without avail.
“Furthermore, this evidence concerned offenses and charges in no wise connected with the case on trial,” etc.
The reasons given by the district judge are sufficient. The shooting of Berthier Major by Joseph St. Romain, Jr., June 13, 1913, the shooting of Telesfort Major July 11, 1913, and the killing of Felix Major on that same date were not parts of the res gestte of the theft committed June 28, 1913. Testimony concerning all these different occurrences would have served to have confused the issue, and, as held by the district judge, it would have prolonged the trial of the case unnecessarily. It would have served to prove the prejudice and animus of the state witnesses against defendants, which ill feelings and prejudice had been admitted by the witness to exist.
The testimony of the witness was doubtless weakened by the admissions of. ill feeling and prejudice on his part towards the defendants ; and this is all that defendants could have hoped to prove on the trial.
If, after answering the questions affirmatively, “Are you unfriendly with the accused?” “Would you like to see the defendants convicted?” the witness had been asked his reasons for entertaining unfriendly feelings towards the accused and desiring to see them convicted, he might have been required to answer ; but no such question appears to have been asked the witness.
In the Case of Spillman, 43 La. Ann. 1001, 10 South. 198, we say:
“The evidence was offered to show the animus of the witnesses a"nd to weaken the effect of. their evidence. The testimony is utterly foreign to the issues of the case, and the possibility of injury from its exclusion is too remote to demand consideration. People who arrest a man for stealing their property are not usually animated by very kind feeling's toward him.”
[2] The next bill of exceptions is taken to a remark made by 'the district attorney in the course of his argument.to the jury, as follows:
“Those people are generally known as desperate men in their community.”
It is claimed that such language must have produced a prejudicial effect on the minds of the jurors against the accused.
Every ill-timed or ill-considered remark of the district attorney in the course of his argument before the jury is not sufficient cause to reverse a verdict.
In the explanation of the district attorney, which is.added to the bill of exceptions, and which explanation is indorsed by the district judge, it appears that he was replying to a very eulogistic and complimentary testimonial by counsel of defendants to the character of defendants and their family connections as members of the community, and of the improbability of their being guilty of cow stealing. Under such circumstances, the language of the district attorney was provoked by counsel for defendant, and used in the heat of argument. And, in such condition, where the trial judge gives proper instructions to the jury, and the judge appears to have done so in this case, no injury resulted to the accused. Counsel in their bill of exceptions, say:
“Counsel for the accused caused a note to be made by the clerk of the words of the district attorney. The presiding judge then stated that he would give instructions at the proper time; and afterwards, in what counsel considered a fair charge, instructed the jury properly.”
Under such circumstances, we are persuaded that the remark did not work any injury to the defendants; and it is positive that the remark did no injury to Berthier Major, one of the defendants, for the jury found him not guilty.
Judgment affirmed.
PROVO STY, J., being absent on account of illness, took.no part.