On Rehearing.
 

 McCALEB, Justice.
 

 A rehearing was granted in this case for the purpose of considering whether the ruling that a verdict of simple assault is responsive to a charge of attempted simple kidnapping is contrary to the decision in State v. Roberts, 213 La. 559, 35 So.2d 216, which was handed down on the same day.
 

 In State v. Roberts, supra, the defendant was indicted for attempting to murder one Cas Shirley by shooting him with a pistol. He was found guilty of aggravated battery. On appeal, he contended that the verdict was not responsive within the meaning of Articles 386, 405 and 406 of the Code of Criminal Procedure and Article 5 of the Criminal Code (which deal with responsive verdicts), because all o.f the elements of aggravated battery were not necessarily included in the definition of the crime of attempted murder. The State maintained, on the other hand, that it was not obligatory for all of the elements of aggravated battery to be necessarily included in the definition of attempted murder and that it sufficed that the indictment allege a state of facts
 
 *619
 
 containing all the ingredients of the lesser offense. And it was argued that, since the indictment averred that the defendant committed attempted murder by shooting Shirley with a pistol, the charge itself exhibited commission of aggravated battery as well as attempted murder and that, therefore, the verdict of the former was responsive.
 

 After reviewing the applicable law and jurisprudence on the subject, we rejected the contention of the State and, citing with approval State v. Antoine, 189 La. 619, 180 So. 465 and State v. Jacques, 45 La. Ann. 1451, 14 So. 213, we said:
 

 “Comparison of the provisions of Articles 386, 405 and 406 of the Code of Criminal Procedure and Article 5 of the Criminal Code, which we have quoted above, with the prior jurisprudence discloses that the former are in reality a codification of-the well-settled pronouncements of this court relative to greater and lesser offenses and responsive verdicts. Under the law and the jurisprudence it is vital to the validity of any verdict for a lesser offense that all the elements of that offense are necessarily contained in the definition of the greater offense.” See 213 La. 566, 567, 35 So.2d 218.
 

 The foregoing declaration of the test to be employed in determining the responsiveness of a verdict for a lesser offense is fully supported by a statement, couched in similar terms, in State v. Desselles, 150 La. 494, 90 So. 773, from which we quoted with approval in the Roberts case.
 

 In reaching the conclusion in the instant case that a verdict of simple assault is responsive to the charge of attempted simple kidnapping, it was reasoned that “ * * * all that is required is that the greater offense must include all the elements of the lesser offense in order to make a verdict of the lesser offense responsive.” We now find that this statement is not entirely accurate for, as we observed in the Roberts 'case, the test is whether the
 
 definition
 
 of the greater offense
 
 necessarily
 
 includes all the elements of the lesser. Stated in another way for practical application, this merely means that, if any reasonable state of facts can be imagined wherein the greater offense is committed without perpetration of the lesser offense, a verdict for the lesser cannot be responsive.
 

 Guided by these principles, we turn our attention to the question presented in the case at bar. Defendant is charged with an attempt to intentionally and forcibly seize and carry a young woman from one place to another without her consent — that is, he is charged with an attempt to commit the crime of simple kidnapping as defined by the first paragraph of Section 45 of the Criminal Code. If he were charged with the substantive offense, i. e., simple kidnapping by forcibly seizing and carrying the young woman from one place to another without her consent, it could be argued with profundity that a verdict of simple assault would be responsive for the reason
 
 *621
 
 that a forcible seizure
 
 [1]
 
 doubtlessly embraces an attempt to use force and violence in restraining the liberty of the intended victim.
 
 [2]
 
 But it does not follow that, because “forcible seizure” is an essential element of the crime of simple kidnapping, as defined in Paragraph I of Section 45 of the Criminal Code, it is necessarily an ingredient of the inchoate offense of attempting to commit the crime. Article 27 of the Criminal Code defines an attempt as follows;
 

 “Art. 27. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
 

 “Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.”
 

 It will be seen from the first paragraph of Article 27 that the essential elements of an attempt are (1) a specific intent to commit a particular crime and (2) an overt act of commission or omission tending directly toward the accomplishment of the object. Thus, in the instant case, where it is charged that the defendant attempted to forcibly seize and carry a young woman from one place to another without her consent, it was only essential that the State prove the specific intent of defendant to commit the crime (simple kidnapping by forcibly seizing and carrying) and an overt act in pursuance of his purpose.
 
 [3]
 
 It was not imperative for the State to show that the defendant
 
 physically attempted
 
 to forcibly seize the person of the young woman as the original opinion erroneously concludes. It was only necessary that the State prove that he committed an overt act in furtherance of his object — i. e., any act which may or may not have embraced a forcible seizure but did not necessarily include it. And, of course, a verdict for simple assault could
 
 not
 
 be responsive, if the State was not required to prove an attempted forcible seizure.
 

 
 *623
 
 Many instances could be given involving á state of facts authorizing a verdict of guilty of attempted simple kidnapping which would not necessarily embody an assault. However, for purposes of this discussion, one example will serve to demonstrate the error of our former conclusion. A. B. intends to kidnap C. D. He entices her into his automobile by telling her that he will drive her to her home, -his real intention being to seize and carry her away. Yet, before she is made aware of his ulterior motive, the automobile breaks down or he is arrested for violating a traffic law or something else happens which deters him from the accomplishment of his ob j ect.
 

 Under such a state of facts, there could be no doubt that A. B. would be amenable to the charge of attempt, as defined by Article 27 of the Criminal Code — for, there are present the two elements necessary to constitute an attempt — (1) specific intent to commit simple kidnapping and (2) an overt act, i. e., the carrying of the girl in the automobile — an act which “tends directly towards the commission of the crime intended, and which will apparently result in its commission unless frustrated by extraneous circumstances, * * Clark and Marshall, Law of Crimes, 4th Ed. 1940, 160, Section 118. Still, he has neither physically attempted to seize her nor has he assaulted her. If he had actually seized her, he would have been guilty of the substantive crime, simple kidnapping.
 

 We therefore hold that the judge ruled properly in refusing defendants’ request tO' charge the jury that it could return a verdict of simple assault.
 

 Disposal of the foregoing bill of exception (No. 39) adversely to defendant entails a consideration of the other bills of exception, which are forty in number. In order that the varied points raised by defense counsel may be readily understood, it is apt to briefly outline the salient features of the case.
 

 The defendant, Poe, was charged jointly with one Otis Ainsworth for the attempted simple kidnapping of the prosecutrix on May 21, 1947. They were arraigned and pleaded not guilty on May 26, 1947 and tried by a jury of five on June 23rd and 24th, 1947. Ainsworth was acquitted. Poe was found guilty and was sentenced to serve fifteen months in the state penitentiary at hard labor.
 

 The State claimed that the prosecutrix was returning to her home in the town of Jena at about 9:00 o’clock on the night of May 21, 1947, after having attended the movie theatre; that, as she reached a point approximately a block from the theatre, the' defendant, Poe, came up from behind, accosted her and grabbed her around the waist; that she protested and tried to get away from him but he kept pulling her toward a log truck with a cab on it which was parked about twenty or thirty feet away; that Ainsworth was standing near the log truck; that the prosecutrix called
 
 *625
 
 to him but he did not render her any assistance; that, finally, her screams became so noticeable that Poe let her go and that he and Ainsworth went to the truck, board■ed it and drove off.
 

 Bills of Exception Nos. 1, 2, 3 and .5 have been grouped by defense counsel for purposes of argument under a general heading “Rushing of the case to trial precipitately.” The taking of these bills resulted from the overruling by the judge of objections by defense counsel to the hurried .arraignment and trial of defendant.
 

 None of these bills has the slightest merit. The defendant was arrested on May .21st and arraigned five days later, on May 26th. His trial on June 23rd and 24th, a month later, was in accord with constitutional precepts guaranteeing to the accused a speedy public trial. Section 9 of Article 1 of the Constitution. Counsel does not .attempt to show that the time between the arraignment and trial was insufficient for '.him to fully prepare his defense or that •other harm has resulted.
 

 Bill No. 4 was taken to the refusal of the judge to grant in toto a motion for bill of particulars in which defendant requested the following information (1) the place where the offense occurred; (2) the manner in which the parties or either of them attempted to seize the prosecutrix; (3) the means or mode by which they or either of them attempted to •carry her; (4) the part taken by each defendant in the perpetration of the alleged offense and (5) the steps taken by each or either to effect the attempt. The judge granted the first request but refused the others.
 

 The complaint is without substance. The granting or refusal of a bill of particulars addresses itself to the sound discretion of the trial judge. State v. Augusta, 199 La. 896,
 
 7
 
 So.2d 177; Articles 235, 288, Code of Criminal Procedure. The judge properly exercised his prerogative in denying defendant’s request as the information requested in the bill had no reference whatever to the charge but was plainly an attempt to obtain knowledge of the evidence upon which the State relied to prove its case.
 

 Bill No. 6 was taken to the overruling of defendant’s objection to the court having the sanity commission supplement its report in accordance with the commission issued to them. Counsel states in his brief that this exception is “not herein urged” and the point was not argued orally. We therefore assume that it has been abandoned.
 

 Bill No. 7 was reserved to the overruling of a motion to quash the petit jury venire. The motion was based on three grounds, the first of which is that the judge issued a written order in open court on May 26th 1947, summoning the jury commission to meet on June 3rd 1947, to select a special petit jury panel and subsequently during the day, but before the
 
 *627
 
 order was spread on the minutes of the court, verbally instructed the Clerk to insert June 4th instead of June 3rd as he had been informed that June 3rd was a legal holiday.
 

 We find no merit whatever in this objection. The action of the judge in instructing the Clerk to change the date in the order signed by him was proper as the fixing of the date was a matter entirely within his control. Article 177, Code of Criminal Procedure. Moreover, even if it were otherwise, Article 203 of the Code of Criminal Procedure specifically declares that the venire may not be challenged because of any defect or irregularity in the manner of selecting the jury “or in the composition, summoning or proceedings of the jury commission, unless some fraud has been practiced or some great wrong committed that would work irreparable injury.” It is difficult to see that the defendant was in any way prejudiced by the mere change of the date on which the jury commission should meet.
 

 The second and third grounds for the motion to quash the venire are that there were no World War II veterans on the jury list and that no members from the ward in which defendant lived were drawn on the jury panel, whereas, twelve members of the panel were drawn from the ward in which the prosecutrix lived. Neither one of the foregoing reasons states a legal cause for quashing the venire in the absence of fraud “or some great wrong committed that would work irreparable injury.” Article 203, Code of Criminal Procedure.
 

 Bills of Exception Nos. 8 and 9 were taken to the overruling of objections made to the opening statement of the district attorney. The objectionable matter allegedly consisted of statements by the district attorney explaining to the jury the difference between the substantive crimes of aggravated kidnapping and simple kidnapping. The judge, in his per curiam to the bills, declares that, in his opinion, the statements of the district attorney were in keeping with the provisions of Article 333 of the Code of Criminal Procedure.
 
 [4]
 

 The statements complained of do not disclose that the judge abused the discretion vested
 
 in him. “The
 
 scope and extent of the district attorney’s opening statement is within the control of the trial judge in the exercise of a wise discretion,' and a conviction will not be set aside for error therein unless the rights of a defendant were plainly violated. State v. Ricks, 170 La. 507, 128 So. 293; State v. McKee, 170 La. 630, 128 So. 658.” See State v. Nahoum, 172 La. 83, 133 So. 370, 374.
 

 Bill No. 10 was reserved to the sustaining of an objection made by the dis
 
 *629
 
 trict attorney to a question propounded to a brother of Ainsworth, who testified for defendants. He was being questioned about a conversation in the motion picture show with defendant, Poe, an hour or so before the prosecutrix was attacked and was asked “Then what did he say?” The district attorney objected on the ground that the question called for the giving of hearsay testimony and the judge sustained the objection, being of the opinion that the evidence sought to be elicited did not come within any exception of the hearsay rule. Counsel for defendant argue here that the evidence sought to be adduced formed part of the res gestae. It is said that, since the charge was an attempt to kidnap and the conviction depended upon the intent of defendants, it was proper to show that Poe, just shortly before the encounter with the prosecutrix took place, had evinced an intention not to commit such an act.
 

 We see no merit in the bill. Suffice it to say that it called for the giving of hearsay testimony and that it was no part of the res gestae.
 

 Bill No. 11 is in the same category as bill No. 10. However, the specific objection to the question propounded the witness, Ainsworth, was made and sustained by the court on the ground that it was a leading question. While Ainsworth was on the stand he was asked, on direct examination, “In what manner were you notified that they (meaning defendants) were ready to go?” The district attorney objected on the ground that the question was leading as there had been no prior testimony from the witness to show that he was waiting on anyone or expecting any kind of invitation.
 

 The trial judge, in his per curiam to this bill, states that he considered the objection well founded and that, even though his ruling be incorrect, the defendant has not been harmed for the reason that his counsel was subsequently permitted to bring out the facts sought to be established by the question, which facts were fully presented to the jury. We think that the statement in the per curiam furnishes an adequate answer to the complaint.
 

 Bills of Exception 12 through 36 were all directed against the overruling of objections to various questions propounded by the district attorney to state witnesses in rebuttal primarily on the ground that the evidence sought to be elicited was not proper rebuttal 'evidence and that, in truth, the state was permitted to retry its case in chief after the defense was closed. Inasmuch as the objections of defense counsel were so varied and numerous, it will expedite matters to re-group the bills so that those of the same quality and character may be considered as one in order to avoid repetition. However, before we do this, it is pertinent to examine the law and jurisprudence respecting rebuttal testimony.
 

 Article 378 of the Code of Criminal Procedure grants the prosecution the right to rebut the evidence adduced by the defend
 
 *631
 
 ant and Article 379 provides that, since the purpose of rebuttal evidence is to disprove, the district attorney should offer all of the testimony upon which he relies for conviction prior to the introduction of any evidence by the defendant “but the application of this rule must rest in the sound discretion of the trial judge.”
 

 In the recent case of State v. Monroe, 205 La. 285, 17 So.2d 331, 332, we had occasion to define and apply the rules relative to the admission of evidence in rebuttal. There, we said:
 

 “Rebutting evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. State v. Hemler, 157 La. 902, 103 So. 257.
 

 “It is rebuttal, not impeaching, to show that the statement of the witnesses as to what occurred is not true. State v. Foster, 150 La. 971, 91 So. 411. And contradiction is one of the means of rebutting the testimony of a witness produced by the defendant in a criminal prosecution as the State can not contradict the testimony of a witness for the defendant until the testimony is offered in defendant’s behalf on the trial of the case. State v. Blount, 124 La. 202, 50 So. 12.”
 
 [5]
 

 With the foregoing principle in mind, we undertake a discussion of the numerous bills reserved by defense counsel to the rebuttal evidence adduced by the State. Bill No. 12 was taken under the following circumstances : After defendants had closed their evidence, the district attorney placed the prosecutrix on the stand in rebuttal and asked her “When you came out of the movie theatre, did you see Mr. Poe?” Counsel for defendant objected on the ground that the question called for testimony which was not properly rebuttal. The judge overruled the objection, being of the opinion that the evidence sought to be elicited was in rebuttal of testimony given by Poe — that he came out of the movie theatre immediately behind the prosecutrix, caught up with her within a few steps and walked along with her engaging in a conversation.
 

 We think that the ruling was correct. The evidence was clearly admissible to contradict and disprove the testimony of Poe and the fact that the prosecutrix was examined in chief as a witness for the State “furnishes no reason for the exclusion” of her testimony “in rebuttal tending to specifically contradict statements made by defendant’s witnesses on their direct or cross-examination”. See State v. Monroe, supra.
 

 The following bills of execution are on: the same footing with bill No. 12 and need, no separate treatment or discussion. Bill No. 13, which was taken to the overruling of an objection to the question “Where was he when you first saw him,” propounded to. the prosecutrix; Bill No. 14, taken under the same circumstances to the question “When was it he first got behind you and
 
 *633
 
 started following you”; Bill No. 15, pertaining to the question “Where was it that he caught up with you or got hold of you”; Bill No. 16, relating to the question “Was he following you from the picture show up to Clyde Russell’s”; Bill No. 17, referring to the question “Was anyone following you from the picture show up to Clyde Russell’s Store”; Bill No. 18, taken to the overruling of the question
 
 “ * *
 
 * just state again exactly your recollection of that conversation”; Bill No. 19, pertaining to the question “How long did that struggle .take place at the gate”; Bill No. 24, reserved to the overruling of the question “After you got back down to the show, did you see Poe or Ainsworth”; Bill No. 25, directed against the overruling of the question “Where were you when you went down to the picture show at first”; Bill No. 26, respecting the question “Where was Miss Florence Bass when you talked to her”; Bill No. 27, relating to the question “Where did you go to the office, where is it?”; Bill No. 28, taken to the overruling of a general objection to the line of questions propounded to the prosecutrix and to her examination in rebuttal as a whole; Bill No. 29, taken to the overruling of the question “Are there lights there where you could have seen anybody coming in ?”; Bill No. 30, relative to the question “How many minutes did you consume standing there waiting on Miss Florence?” and Bill No. 36, taken to the overruling of an objection to the following question propounded to Mrs. Earl Mann, a rebuttal witness, “These. parties, on direct examination by Mr! Parker, both of them several times stated that they told this on the stand exactly like they did at your house; is that true ?”
 

 Counsel for defendant devotes much time and space in the brief to a discussion of the foregoing bills as a whole and, laying particular stress on the fact that the prosecutrix had previously testified at length on the case in chief relative to matters about which she was questioned on rebuttal, charges that the prosecution was permitted to re-try its case after the defense was closed.
 

 A careful examination of the bills of exception and the per curiams attached thereto has satisfied us that the accusation is not well founded. The fundamental error in the contention of counsel is that he fails to recognize the right of the State to recall a witness in rebuttal to -give testimony in contradiction of defense evidence even though the witness has already testified in the case in chief about the same matters. State v. Monroe, supra. In such instances, it is necessary for the trial judge to determine whether the questions propounded on rebuttal are for purposes of repelling defense evidence or whether the State is merely attempting to cumulate its evidence in chief. That there are many cases where the line of demarkation is difficult to perceive is not to be doubted. The able and experienced drafters of our Code of Criminal Procedure well realized this and it was for that reason that it was
 
 *635
 
 provided in Article 379 of the Code that application of the rule respecting rebuttal evidence is a matter which “must rest in the sound discretion of the trial judge.” Far from showing an abuse of discretion, consideration of the judge’s per curiam to each of the numerous bills reveals a keen appreciation by him of the nature of the evidence sought to be adduced and a valid explanation for its admission.
 

 Bill No. 20 was taken to the overruling of an objection to the following question propounded to the prosecutrix while she was on the stand in rebuttal— “When you had that struggle at the gate, and you were holding on to the gate and was trying to keep him from pulling you loose, as you have testified on direct examination, was there anything to obstruct your view of Ainsworth, or that might obstruct Ainsworth’s view of you?” The objection was based on the ground that the evidence was not proper rebuttal since the prosecutrix and Ainsworth had both previously testified that they saw one another.
 

 For our part, we fail to see how the defendant, Poe, was prejudiced by the admission of the evidence. Obviously, the question was propounded solely in an effort to connect Ainsworth with the attempted kidnapping.
 

 To the same effect is Bill No. 21, reserved to the overruling of an objection to the question “What did Ainsworth do or say when you called to him for help?” and Bill No. 22 in which defense counsel asked that the jury be instructed not to consider the answer of the prosecutrix to the question propounded in Bill No. 21.
 

 Bill No. 23, which was reserved to the overruling of the question propounded to the prosecutrix “How far and to where had Mr. Ainsworth proceeded when you were able to get away from Mr. Poe?” must be viewed in the same aspect as Bill Nos. 2Ó, 21 and 22. The evidence sought to be adduced concerned only the defendant, Ainsworth, and could not have been prejudicial to Poe as he admittedly struggled with the prosecutrix.
 

 Bill No. 31 relates to the testimony offered by Miss Florence Bass, a State witness, who had testified in chief and was called in rebuttal to contradict Poe’s testimony that he left the movie theatre with the prosecutrix. She was asked, “Miss Florence, you stated this morning, or yesterday, that you saw Earline Mann when she left the movie on her way home?” Objection was made on the ground that the evidence to be elicited was not properly rebuttal. The judge thought otherwise and we find no error in his ruling for the reasons heretofore set forth.
 

 In the same category is Bill No. 32, which was taken to the overruling of an objection to the following question propounded to Miss Florence Bass: “Will you give about what time had elapsed when these two events took place, and which happened first?” and Bill No. 33, per
 
 *637
 
 taining to the question “Did you and Mrs. Plummer have any conversation there?”
 

 While Sheriff Floyd was on the stand in rebuttal, he was asked by the district attorney “Mr. Floyd, you were outside the Mann house. Did you hear what conversation took place between Mr. Mann and these parties?” The same objection, that the testimony sought to be adduced was improper rebuttal, was made by defense counsel and, when it was overruled, Bill No. 34 was reserved.
 

 The ruling was correct. The question propounded referred to a conversation between the father of the prosecutrix and the defendants and was merely introductory to the admission of additional evidence relative to the nature of the conversation in an effort by the State to contradict and repel evidence given by the defendants.
 

 Bill No. 35 was taken to the overruling of an objection to the following question propounded to Sheriff Floyd in rebuttal: “Who swore out the affidavit?” The judge states in his per curiam that the question propounded concerned only the defendant, Ainsworth; that Ainsworth had contended that no charge was placed against 'him originally and that the State, to disprove his statement, was attempting to show that he and Poe had actually been charged in an affidavit at the same time. The ruling was correct.
 

 While the district attorney was making his closing argument to the jury, he proclaimed “If these parties are such fine characters as Mr. Parker would lead you to believe, why then didn’t he put somebody on the stand to prove their character?” Upon objection of defense counsel, the judge immediately cautioned the district attorney to refrain from continuing with such an argument and instructed the jury to disregard any statements by either attorney, not borne out by the evidence. Notwithstanding this ruling, counsel reserved Bill No. 37, contending that the statement was so damaging and prejudicial that it could not be cured by instructions of the judge. An argument is made in this court to the same effect.
 

 The proposition is not well founded. In the first place, the remarks of the district attorney were fair comm.ent made in answer to the argument of defense counsel. Article 382 of the Code of Criminal Procedure declares:
 

 “Counsel have the right to draw from the evidence received, or from the failure to produce evidence shown to be in the possession of the opposite party, any conclusion which to them may seem fit, hut counsel have no right to draw from such evidence or suppression of evidence an incorrect conclusion of law.”
 

 But, apart from this, the remark cannot be regarded as prejudicial, as the judge promptly instructed the jury to disregard any statements of counsel not supported by evidence. It is well settled that a conviction will not be reversed because of the
 
 *639
 
 remarks of the district attorney which are provoked by opposing counsel, particularly when the jury is properly instructed with respect thereto by the trial judge and there is nothing in the record to show that the jury was actually influenced by such remarks or that they contributed to the verdict returned by them. State v. Major, 134 La. 774, 64 So. 710; State v. Borde, 209 La. 905, 25 So.2d 736, citing State v. Tucker, 204 La. 463, 15 So.2d 854 and other cases.
 

 Bill No. 38 was reserved to the action of the judge in limiting the argument before the jury to one hour and fifteen minutes for each side. The judge, in his per curiam, states that he granted defense counsel an additional fifteen minutes and that counsel actually used only one hour and twenty minutes of the allotted time. It suffices to say that the bill is frivolous.
 

 Bills Nos. 40 and 41 were reserved to the overruling of motions for a new trial and in arrest of judgment. An examination of the motion for a new trial, in which counsel re-urges all of the bills of exception reserved during the proceedings, consists of an argument on the facts of the case. This, of course, presents nothing for review as our jurisdiction in criminal cases is limited to a consideration of questions of law.
 

 The motion in arrest of judgment is directed at the form in which the jury returned a verdict written on the back of the indictment. This is purely a captious objection which need not be discussed as it has not been pressed in this court.
 

 The conviction and sentence are affirmed. The right of appellant to apply for a rehearing is reserved.
 

 O’NIELL, C. J., and PONDER, J., dissent.
 

 [1]
 

 Webster’s New International Dictionary defines “seizure” as the “act of seizing or state of being seized; sudden.and forcible grasp or clutch; a taking into possession; as, the seizure of a thief, a throne, etc.”
 

 [2]
 

 Article 33 of the Criminal Code defines a battery to be “the intentional use of force or violence upon the person of another * * * ” and Article 36 declares that an assault is an attempt to commit a battery.
 

 [3]
 

 See comment under Article 27 of the Criminal Code with reference to the scope of the Article, the specific intent necessary and the overt act; also the numerous authorities cited therein.
 

 [4]
 

 Article 333 requires an opening statement by the district attorney “explaining the nature of the charge and the evidence by which he expects to establish the same”
 

 [5]
 

 To the same effect see Marr’s Criminal Jurisprudence of Louisiana, Section 633, page 966.